[No. D004746. Fourth Dist., Div. One. Apr. 12, 1988.]

JEFFREY STODDARD, Plaintiff and Appellant, v.
WESTERN EMPLOYERS INSURANCE COMPANY et al.,
Defendants and Respondents.

## COUNSEL

Kartvedt & Smith, Maynard O. Kartvedt Churchill & Kaplan, and Robert J. Kaplan for Plaintiff and Appellant.

Hollywood & Neil, Harrison R. Hollywood, Randall E. Smith, William K. Day, Post, Kirby, Noonan & Sweat, Michael L. Kirby and Stephanie Sontag for Defendants and Respondents.

## OPINION

**WORK, Acting P. J.**—Alleging damages from what he considered unreasonable delays in resolving his workers' compensation claims, Jeffrey Stoddard sued his employer's insurers, Western Employers Insurance Company (Western) and The Travelers Insurance Company (Travelers), for breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and violation of Insurance Code section 790.03, subdivision (h). Although that Insurance Code section is facially all-inclusive, we hold Stoddard's complaint does not allege any insurer misconduct other

than intentional withholding of compensation payments. For the reasons which follow, we hold Stoddard's exclusive remedy for this tortious conduct lies in the penalty provisions of the Workers' Compensation Act, and affirm the judgment.

I

For purposes of reviewing the demurrer, we accept as true the factual allegations in the detailed complaint. Stoddard began working with Oberg Construction in 1974 and first injured his back while shoveling asphalt in February 1979. Chymopapain injection surgery resulted in 100 percent improvement. Western, Oberg Construction's workers' compensation insurer, handled the claim. At Western's request and without legal counseling, Stoddard signed a stipulated permanent disability award for 18¾ percent and lifetime medical care for his back.

During January through March 1981, Stoddard drove a truck over bumpy, rocky dirt roads for Oberg Construction, resulting in severe low back pain and left leg numbness. He reported his medical condition to Oberg and sought medical care with Dr. Robert Brown, his former treating physician who had been previously authorized by Western and Western's claims examiner, Daphne Hamasaka. Stoddard was treated with pain pills, muscle relaxants, and recommended rest. Dr. Brown noted in his chart on April 16, 1981, that Stoddard suffered low back pain with radiation into the left buttock for three weeks caused by driving Oberg's dump truck. Stoddard reported this information to Western and Hamasaka.

In the spring of 1981, Stoddard was laid off by Oberg Construction. In May 1981, he began working with S. J. Grove & Sons in San Diego as a water truck driver. He continued to have low back pain and left leg numbness. In July 1981, he consulted Dr. Leroy Hunsaker and reported that his pain developed while driving the truck for Oberg Construction, which Dr. Hunsaker noted in his chart. His condition remained the same during August and September 1981, while being treated by Dr. Hunsaker. Although driving the water truck over rough terrain jostled him, he was able to do the work by wearing a back support belt, using leg wraps, and taking prescription medication.

On October 7, 1981, a coemployee at S. J. Grove & Sons grabbed Stoddard around the waist and accidentally severely twisted his back. This incident, observed by his foreman, caused his condition to deteriorate rapidly and he was unable to report to work on October 8, 1981. He was in severe pain which caused him to be unable to move from the waist down and was

taken to the hospital by emergency ambulance. Surgery was performed on October 27, 1981.

Shortly after October 8, 1981, Stoddard and his wife began calling Western's claims examiner, Hamasaka, almost daily. Hamasaka had handled his previous claim and knew Western had agreed to provide lifetime medical care for his low back, but stated she would not extend benefits, would not contact Dr. Brown to confirm the reinjury of March 1981 and would not contact Dr. Hunsaker to confirm the continued treatment as of July 1981. Hamasaka told Stoddard, "You better hire an attorney because I am not going to do anything for you."

Stoddard did obtain an attorney, but both Western and the workers' compensation carrier for S. J. Grove & Sons, Travelers, refused to extend benefits. Both insurers said the other insurance company was responsible, although they knew they were jointly and severally liable, and that one of them was required to accept the claim and seek contribution from the other.

As of October 21, 1981, Dr. Hunsaker had prepared a short written report stating Stoddard's condition was job related. Western and Travelers did not seek any other opinions or reports. On January 25, 1982, Dr. Hunsaker wrote a formal workers' compensation report stating his belief the back problem was the result of repetitive ongoing trauma rather than one specific incident.

Western finally sought another medical opinion, and on February 12, 1982, Dr. William Mowrey opined the back condition was the result of cumulative effects of the work at Oberg Construction and S. J. Grove & Sons. Notwithstanding the unanimous agreement by all medical personnel, both insurers refused to provide benefits.

Stoddard was able to get his union's group health insurance to pay a portion of his medical bills. He repeatedly begged Western and Travelers to at least pay the amount not being paid by his union's insurance in order to save his good credit rating and prevent financial ruin. He continually told the insurers by letter and phone of his destitute condition.

As a result of the insurers' acts, Stoddard has lost most of his assets, including his mobilehome, boat, truck, car, furniture, furnishings and savings account. His credit has been ruined and he has been subjected to harassment by bill collectors whom he cannot pay. He had difficulty paying for medicine and began to use alcohol to kill his incessant pain, triggering more mental health and family problems. His wife was required to stay at home to care for him. He finally had to move to Nevada to live with his

elderly mother-in-law, who took out a $10,000 second trust deed to assist in the support of Stoddard and his family. He initially had difficulty obtaining medical care in Nevada because of the insurers' refusal to pay. A third surgery was performed in March 1983, but was not successful.

A workers' compensation hearing was held on June 3, 1983. The sole witness presented by the insurers was a former driver on the Victorville job with Oberg Construction who merely testified he thought the truck Stoddard had been driving rode fine. The workers' compensation judge ordered payments of all benefits by the insurers jointly and severally, reimbursement to the union's insurer and the California Employment Development Department, and payment to Stoddard's wife for home nursing care. The judge found both insurers had unreasonably refused to advance benefits pending litigation and assessed a 10 percent penalty under Labor Code section 5814.

Benefits were still not paid until appellate procedures were exhausted. Benefits were then paid, but the insurers have failed to pay $9000 worth of medical bills and refused to reimburse Stoddard for several hundred dollars of mileage expenses necessary to obtain medical care. His disability benefits were also arbitrarily and without notice terminated for two months at a time.

Initially, the superior court ruled Stoddard's first complaint failed to allege extreme or outrageous conduct constituting a separate sphere of activity sufficient to remove it from the exclusive remedy rule of the workers' compensation statute, and granted a demurrer with 30 days leave to amend. Stoddard's attorney expressed his intent to obtain the claims file and conduct depositions in order to plead additional facts. According to Stoddard's attorney at the demurrer hearing on the second amended complaint, depositions were noticed and a demand for documents made, but the insurers refused to provide the information. The superior court issued a protective order and sustained the demurrer on the second amended complaint without leave to amend. The legal basis of the trial court's ruling was that even an insurer's intentional and bad faith denial of a meritorious claim can only be remedied under the workers' compensation statute, unless the insurer also engages in additional tortious acts independent of the mere refusal to pay benefits.

The trial court dismissed the complaint for failing to state facts outside of the exclusive jurisdiction of the workers' compensation statute.

## II

The workers' compensation statute provides compensation for injuries sustained in the course of employment, without regard to the employer's

negligence. (Lab. Code,[1] § 3600.) In Chapter 3, the statute provides it is the exclusive remedy against the employer for such injuries. (§ 3601.) In Chapter 5, the statute allows actions at law based on the employment injury against persons other than the employer (§ 3852) but defines the term "employer," as used in Chapter 5, as including the workers' compensation insurance carrier (§ 3850). The statute provides for a penalty of 10 percent of the award when payment of compensation has been unreasonably delayed or refused. (§ 5814.)[2]

In *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063], our Supreme Court defined the extent to which the workers' compensation scheme precludes a civil action against an employer's insurer under the "exclusive remedy rule." The plaintiff in *Unruh* alleged the insurer's representative misrepresented his capacity and enticed her to go to Disneyland, where he encouraged her to engage in strenuous physical activities while secretly filming her, and then showed the films at the workers' compensation hearing, causing her to have a physical and mental breakdown. (*Id.* at p. 621.) *Unruh* holds a *negligent* investigation of an employee's claim is properly remedied under the workers' compensation scheme, whereas an *intentionally deceitful* course of conduct in an investigation is properly subject to a civil action. (*Id.* at pp. 628, 630.)

There is broad language in *Unruh* which suggests the court sought to achieve a balance between the goal of maintaining the exclusivity of the workers' compensation system, and the competing goal of allowing plaintiffs an opportunity to obtain full compensation for their injuries, by making a decisive distinction between negligent and intentional misconduct. This broad language appears in passages such as the following: "As will appear,

---

[1] All statutory references are to the Labor Code unless otherwise specified.

[2] The above-cited statutory provisions state as follows: *Section 3600*: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as provided in Section 3706, shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment. . . ." (§ 3706 provides an employee may sue the employer in an action at law if the employer fails to secure workers' compensation coverage.)

*Section 3601*: "Where the conditions of compensation exist, the right to recover such compensation . . . is . . . the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his employment . . . ."

*Section 3852*: "The claim of an employee for compensation does not affect his claim or right of action for all damages proximately resulting from such injury or death against any person other than the employer."

*Section 3850*: "As used in this chapter: (b) 'Employer' includes insurer as defined in this division."

*Section 5814*: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent."

we conclude that the Board had exclusive jurisdiction as to plaintiff's count based on a theory of *negligence* but not as to those counts based on the carrier's *intentional torts.*

"*. . . . . . . . . . . . . . . . .

"Permitting the employee to maintain an action at law for the insurer's *intentional torts* will subserve these objectives but at the same time will not discourage the insurer from fulfilling its proper role in the compensation scheme." (*Id.* at pp. 624, 630; italics added.)

■ Under a broad interpretation of *Unruh,* an employer's insurer would be liable at law for any intentional, as opposed to negligent, misconduct. However, appellate courts have more narrowly interpreted *Unruh.* As we stated in dicta in *Dill* v. *Claims Admin. Services, Inc.* (1986) 178 Cal.App.3d 1184, 1188 [224 Cal.Rptr. 273] (where we held a suit against the independent claims administrator of a self-insured employer was not barred by the exclusive remedy provisions): "This aspect of *Unruh* has been limited by later Court of Appeal decisions to cases in which the employee alleges not only that the insurer's conduct was *intentional* but also specifies 'objectively identifiable' and 'independently tortious' conduct which is 'distinguishable from the normal investigation expected of a workers' compensation carrier.' [Citations.]"

Under this narrowed analysis, the appellate courts routinely have held allegations of an insurer's acts of delaying or refusing to pay benefits, even if intentional, are not sufficiently outrageous nor independently tortious to escape the exclusive remedy bar. (See, e.g., *Cervantes* v. *Great American Ins. Co.* (1983) 140 Cal.App.3d 763, 771, 774 [189 Cal.Rptr. 761]; *Caplan* v. *Fireman's Fund Ins. Co.* (1985) 175 Cal.App.3d 146, 148 [220 Cal.Rptr. 549], and cases there cited; *Soto* v. *Royal Globe Ins. Co.* (1986) 184 Cal.App.3d 420, 426-429 [229 Cal.Rptr. 192].) By way of comparison, in *Teague* v. *Home Ins. Co.* (1985) 168 Cal.App.3d 1148, 1151-1153 [214 Cal.Rptr. 773], the court held claims of illegal entry into the employee's vehicle and garage for surveillance purposes stated facts sufficient to establish the tort of trespass, an intentional tort beyond acceptable investigative practice and not barred by the exclusive remedy rule.

Here, the alleged facts suggest only that Western and Travelers continued to deny Stoddard's claim after definitive proof the injury was caused by employment with both employers. Such a refusal constitutes a denial of an undisputably valid claim, which could be sufficiently reprehensible to support a civil action for punitive damages. (See, e.g., *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 821-822 [169 Cal.Rptr. 691, 620 P.2d

141] [punitive damage award supported by evidence that insurance representative knew the plaintiff's claim of injury was bona fide, and yet called plaintiff a fraud, and told plaintiff he had a sickness not a disability even though there was no reason to deny the disability claim].)

Although one may view an insurer's act of denying an undisputably valid claim as reprehensible, extensive case precedent flatly holds even an insurer's allegedly bad faith refusal to pay a workers' compensation claim is not conduct outside the exclusive remedy provisions of the workers' compensation system. Since this holding has been uncontradicted and reiterated for several years, we feel it is appropriate to apply this appellate precedent to the case before us. (See *Arentz* v. *Blackshere* (1967) 248 Cal.App.2d 638, 640 [56 Cal.Rptr. 809].)

We do so reluctantly, however. There are substantial policy reasons for allowing civil actions when an insurer engages in intentional misconduct such as denying an undisputably valid claim. Certainly, the fiduciary obligation of a workers' compensation insurer is no less than one insuring a homeowner interest. We perceive no reason to exclude workers' compensation carriers from the facially all-inclusive provisions of Insurance Code section 790.03, except for case precedent. We believe it would be more equitable to treat all insurers equally when they intentionally ignore fiduciary duties to the detriment of a beneficiary. Further, unlike the bargain struck with the employer which justifies the exclusive remedy rule (see *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 158 [233 Cal.Rptr. 308, 729 P.2d 743]), the employer's insurer is not subject to "no-fault" liability under the workers' compensation system. The insurer is subject to a de minimis 10 percent penalty for refusal to pay only if it acts unreasonably; i.e. with fault. (§ 5814.) Since the workers' compensation scheme does not give the employee certain compensation for *delayed* payments regardless of fault, there is no apparent justification for depriving him of his right to an action at law for the insurer's intentional misconduct. Moreover, the 10 percent penalty is based on the amount of the workers' compensation award, and is unrelated to the degree of culpability of the insurance carrier or the actual damage the insurer's wrongful conduct inflicts on the claimant.[3]

---

[3] For example, a modest workers' compensation award would result in a slight penalty even if the insurer's conduct was outrageous and intentional and financially ruined the claimant. On the other hand, a fully disabled award recipient would receive a greater penalty even if the insurer engaged in only negligent delay which resulted in no emotional or financial detriment.

Having expressed these concerns,[4] judicial certainty requires us to follow firmly established precedent, leaving potential change to our Supreme Court or the Legislature. Since the complaint alleges only a refusal to pay benefits, it fails to state a cause of action outside the exclusive remedy rule, and the demurrer was properly sustained.[5]

## DISPOSITION

The judgment of dismissal is affirmed.

Todd, J., and Benke, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 29, 1988.

---

[4] Similar concerns have been expressed in *Ricard* v. *Pacific Indemnity Co.* (1982) 132 Cal.App.3d 886, 894 [183 Cal.Rptr. 502], *Cervantes* v. *Great American Ins. Co., supra,* 140 Cal.App.3d at pp. 772-773 and, most recently, *Hernandez* v. *General Adjustment Bureau* (1988) 199 Cal.App.3d 999, 1006 [245 Cal.Rptr. 288].

[5] We have reviewed the considerable out-of-state compendium of authority submitted by Stoddard. All citations are distinguishable, either on the underlying facts or the applicable statutory scheme.