227 Cal.App.3d 1474 (1991)
278 Cal. Rptr. 474
MICHAEL MITCHELL et al., Plaintiffs and Appellants,
v.
SCOTT WETZEL SERVICES, INC., et al., Defendants and Respondents.
Docket No. G008689.
Court of Appeals of California, Fourth District, Division Three.
February 26, 1991.
*1476 COUNSEL
Lawrence E. Hanna for Plaintiffs and Appellants.
Murchison & Cumming and Edmund G. Farrell III for Defendants and Respondents.
OPINION
SILLS, P.J.
This case involves serious allegations of intentional misconduct by the workers' compensation claims administrator of a self-insured employer. Because these allegations relate to the enforcement of workers' compensation benefits, we conclude exclusive jurisdiction lies with the workers' compensation system. We do so, however, reluctantly.

*1477 FACTS
Plaintiff Michael Mitchell appeals a judgment of dismissal following the sustaining of the demurrer of defendant Scott Wetzel Services, Inc. (1) A demurrer admits all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (Serrano v. Priest (1971) 5 Cal.3d 584, 591 [96 Cal. Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) Stripped of contentions, deductions and conclusions, the first amended complaint alleges the following facts:
Mitchell suffered an injury while working for Alpha Beta. Wetzel administers Alpha Beta's workers' compensation claims. Mitchell made a claim for workers' compensation benefits. Wetzel denied medical treatment, and denied and delayed rehabilitation benefits to Mitchell. It consistently made late temporary disability payments. It threatened to terminate benefits for untrue reasons.
In addition to generalized allegations, the complaint specified a number of particular instances of misconduct on Wetzel's part:
 Twice, during 1984, Wetzel told Mitchell a check was in the mail, when it had not yet been sent.
 On February 7, 1986, Wetzel told Mitchell to come to Wetzel's office to pick up a check. When Mitchell arrived, Wetzel told Mitchell the check had already been mailed. In fact, the check was not mailed until almost a week later.
 On February 13, 1986, Wetzel issued a $591.36 check for temporary disability benefits to Mitchell, only to stop payment on the check by the time Mitchell presented it to the bank for payment.
 On February 20, 1986, a Wetzel adjuster lied before a workers' compensation appeals board judge when she said the adjuster who had been working on the Mitchell file was no longer employed by Wetzel. The adjuster also lied when she said Wetzel did not know why there were so many errors and late payments concerning Mitchell's file. Her purpose was to deprive the Workers' Compensation Appeals Board (WCAB) of information relevant to penalties against Wetzel.
 On April 16, 1986, Wetzel issued Mitchell a check for $4,000, representing a permanent disability payment. Mitchell requested assurance the check was negotiable. Wetzel said it was. However, when the vice-president *1478 of the bank negotiating the check contacted Wetzel, Wetzel told the vice-president not to negotiate the check until three days had passed.
 On August 26, 1986, Wetzel told Mitchell (then in Texas) a rental car would be waiting for him at Long Beach Airport to take him to a medical examination. When Mitchell arrived, however, no car was waiting and he had to make his own transportation arrangements.
The complaint did not allege the incidents involving the check constituted criminal conduct.[1] Rather, the complaint charged these incidents constituted false representations made by Wetzel to Mitchell.[2]
Mitchell also alleged all of Wetzel's actions were done with full knowledge of his emotional and financial vulnerability, and with the intent to cause him injury. His wife, Sharon, alleged loss of consortium.

DISCUSSION
This case presents an issue which has received considerable attention in published opinions  when does a workers' compensation insurer step out of its role as an insurer so as to be vulnerable to civil suit? The Workers' Compensation Act invests the WCAB with exclusive jurisdiction over disputes regarding an employee's right to compensation or an employer's liability. (Lab. Code, § 5300, subds. (a) and (b); Marsh & McLennan, Inc. v. Superior Court (1989) 49 Cal.3d 1, 5 [259 Cal. Rptr. 733, 774 P.2d 762].) (2) This exclusive jurisdiction extends to claims against the employer's workers' compensation insurer. (Lab. Code, § 3850, subd. (b); Marsh & McLennan, Inc., supra, 49 Cal.3d at p. 6.)
Independent administrators of self-insured employers are treated as insurers. (See Schlick v. Comco Management, Inc. (1987) 196 Cal. App.3d 974, 978-980 [242 Cal. Rptr. 241]; Santiago v. Employee Benefits Services (1985) 168 Cal. App.3d 898, 901 [214 Cal. Rptr. 679]; Denning v. Esis Corp. (1983) 139 Cal. App.3d 946 [189 Cal. Rptr. 118].) This division has rejected Dill v. Claims Admin. Services, Inc. (1986) 178 Cal. App.3d 1184 [224 Cal. Rptr. 273], holding to the contrary. (Schlick, supra, 196 Cal. App.3d at p. 980.)
*1479 (3) There is, however, a judicially created exception to the WCAB's exclusive jurisdiction over insurers. Conduct which "goes beyond the normal role of an insurer" renders the insurer vulnerable to suit as a "person other than the employer." (Unruh v. Truck Insurance Exchange (1972) 7 Cal.3d 616, 630-631 [102 Cal. Rptr. 815, 498 P.2d 1063].)
In Unruh, a workers' compensation carrier hired an investigator to evaluate the plaintiff's back injury. The investigator beguiled the plaintiff into becoming romantically interested in him. He took her to Disneyland, where he had her filmed trying to negotiate the rope and barrel bridges on Tom Sawyer's island.[3] The investigator showed the film at a WCAB hearing, prompting a breakdown requiring hospitalization. The plaintiff was allowed to sue the carrier for its investigator's alleged assault and intentional infliction of emotional distress. (See 7 Cal.3d at pp. 630-631.)
As the Supreme Court recently noted, however, decisions of the Courts of Appeal have "limited the liability of insurance carriers under Unruh." (Marsh & McLennan, Inc., supra, 49 Cal.3d at p. 7.) Those decisions have established delay or refusal to pay benefits, even if done intentionally and with full knowledge of the hardship to the injured claimant, is insufficient to avoid exclusive jurisdiction. (E.g., Stoddard v. Western Employers Ins. Co. (1988) 200 Cal. App.3d 165, 171 [245 Cal. Rptr. 820]; Schlick v. Comco Management, Inc., supra, 196 Cal. App.3d at p. 982; Cervantes v. Great American Ins. Co. (1983) 140 Cal. App.3d 763, 771 [189 Cal. Rptr. 761]; Everfield v. State Comp. Ins. Fund (1981) 115 Cal. App.3d 15, 19 [171 Cal. Rptr. 164].) Exclusive jurisdiction is still the rule even though the delay or refusal creates emotional distress separate from the original injury (Schlick, supra, 196 Cal. App.3d at p. 981; Everfield, supra, 115 Cal. App.3d at p. 21) or is otherwise egregious. (See Stoddard, supra, 200 Cal. App.3d at pp. 168-169 [claimant lost his mobilehome, boat, truck, car, furniture, furnishings and savings, was driven to alcohol to kill incessant pain, and forced to live with mother-in-law].)
In Marsh & McLennan, the Supreme Court appears to have approved the appellate limitations on the Unruh exception to exclusive jurisdiction.[4] (4a) Accordingly, Mitchell's claims of delay, denial, or threatened termination *1480 of benefits do nothing to remove his case from the exclusive jurisdiction of the WCAB.
But Mitchell also alleges misconduct which does not, at least at first blush, obviously fit within the categories of delay or denial of benefits. Specifically, he alleges misrepresentations about checks, issuance of checks which he could not negotiate, misrepresentation about a rental car, and perjury before the WCAB.
(5) In adjudicating whether a claim falls within the workers' compensation system, all doubt should be resolved in favor of finding jurisdiction within the workers' compensation system. (Fremont Indemnity Co. v. Superior Court, supra, 133 Cal. App.3d at p. 881 ["The preferred policy is to repose in the WCAB as much as possible resolution of problems and alleged claims arising out of worker's compensation matters."]; Gilford v. State Compensation Ins. Fund (1974) 41 Cal. App.3d 828, 834 [116 Cal. Rptr. 615] ["`"Where there is any reasonable doubt as to the jurisdiction, the courts must resolve such doubts in favor of jurisdiction"'"].) Accordingly, a close case should be held to fall within the system.
Labor Code section 5300 provides in pertinent part: "All the following proceedings shall be instituted before the appeals board and not elsewhere, except as otherwise provided in Division 4. [¶] (a) For the recovery of compensation, or concerning any right or liability arising out of or incidental thereto. [¶] (b) For the enforcement against the employer or an insurer of any liability for compensation imposed upon him by this division in favor of the injured employee, his dependents, or any third person." (Italics added.) Section 5814 provides in pertinent part: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent." (4b) These sections establish exclusive jurisdiction within the workers' compensation system for "all disputes over coverage and payment." (Marsh & McLennan, Inc., supra, 49 Cal.3d at pp. 7-8.) Such disputes necessarily include those over the "discontinuance" of payments as well. (See id. at p. 7.)
On close examination, Mitchell's allegations essentially involve the payment of benefits, the enforcement of the payment of benefits, the discontinuance of benefits, or rights incidental to the payment of benefits. The misrepresentations about the status and negotiability of the checks concern the enforcement of the payment of benefits  the checks being misrepresented were all benefit checks. But for the failure of Wetzel to pay benefits (by issuing timely negotiable checks), Mitchell would have no complaint. *1481 Moreover, Wetzel's stopping or delaying payment on its checks amounts to a discontinuance or delay in benefits.
This focus on benefit payments distinguishes this case from Unruh. As reprehensible as Wetzel's conduct may have been, it concerned how and when benefits are paid  something manifestly within a workers' compensation insurer's role. Unruh, by contrast, involved not only an insurer's investigation (within the role) but the formation of a romantic involvement with the plaintiff (outside it). Workers' compensation insurers pay money to injured workers. They do not provide dating or matchmaking services.
The same analysis applies to the allegations of perjury before the WCAB. The alleged perjury occurred in the course of a WCAB enforcement proceeding, and was motivated by Wetzel's desire to deprive the WCAB of information relevant to possible penalties. It is hard to imagine any matter bearing more directly on enforcement of payments.
The misrepresentation involving the car rental involves a somewhat different analysis. This is the closest Wetzel comes to stepping out of the role of insurer. Insurers do not normally provide rental cars. Nevertheless, even here, the activity is closely connected to the payment of benefits. The alleged misrepresentation occurred in the context of travel arrangements incidental to a medical examination which was part of the processing of Mitchell's claim.
The consortium claim falls with the remainder of the complaint. (Santiago v. Employee Benefits Services, supra, 168 Cal. App.3d at p. 906 ["the exclusivity of the remedies under the Act extend to actions for loss of consortium"].)
Mitchell relies on Hernandez v. General Adjustment Bureau (1988) 199 Cal. App.3d 999 [245 Cal. Rptr. 288]. In Hernandez, an independent insurance adjuster was consistently late with disability payments despite knowing the plaintiff's susceptibility to mental distress and suicide. The court held the independent adjuster was not immune from suits for intentional infliction of emotional distress because it was neither an employer nor an insurer. (199 Cal. App.3d at p. 1003.) The independent insurance adjuster's "degree of consanguinity to the employer" was simply "too remote" to the employer to benefit from the employer's statutory immunity. (199 Cal. App.3d at p. 1004.)
Hernandez is distinguishable from the instant case. In Hernandez the suit was against an independent adjuster hired by an insurance company. Here, the suit is against the claims administrator of a self-insured employer. As mentioned above, this division, in Schlick, has already determined independent administrators to be within the protection afforded insurers. Mitchell has not given us any reason to overrule Schlick.
*1482 Nevertheless, we affirm reluctantly. The immunity now afforded workers' compensation insurers, judging from the reported cases, all too often leads to intentional misconduct. Apparently, the 10 percent statutory penalty does not provide a sufficient deterrent to abuse.[5] We join with our colleagues in Stoddard and Hernandez who have urged the Legislature to address this area of law.[6]
Moreover, our decision should not be construed to countenance the reprehensible conduct alleged in Mitchell's complaint. (Cf. Egan v. Mutual of Omaha Ins. Co. (1979) 24 Cal.3d 809, 821-822 [169 Cal. Rptr. 691, 620 P.2d 141] [recounting inhumane acts of disability insurer held to justify imposition of punitive damages].) (6) The WCAB has the power to punish that conduct, even to the extent of imposing multiple 10 percent penalties. (Gallamore v. Workers' Comp. Appeals Bd. (1979) 23 Cal.3d 815, 823-824 [153 Cal. Rptr. 590, 591 P.2d 1242].) We trust the WCAB will impose such multiple penalties in this case if the facts so warrant.
The judgment is affirmed.
Sonenshine, J., and Wallin, J., concurred.
NOTES
[1] Penal Code section 476a, subdivision (a), makes it a crime to deliver a check "knowing at the time" there are "not sufficient funds" to pay the check. There were no allegations in the complaint there were not sufficient funds to cover any of the checks delivered to Mitchell.
[2] The check incidents are set out with specificity in paragraphs 22, 23, 24, 26, 27, 30, 31, 42, 43, 46, 47, 54A, and 54B. Each one of these paragraphs employed the words "representation" or "represented" to describe Wetzel's conduct.
[3] Unruh does not specifically mention the bridges were on Tom Sawyer's island. We take judicial notice of the fact no other place in Disneyland has such bridges, as our Supreme Court apparently did in Marsh & McLennan, Inc. v. Superior Court, supra, 49 Cal.3d at page 6.
[4] Marsh & McLennan cited Everfield, supra, 115 Cal. App.3d 15, and Fremont Indemnity v. Superior Court (1982) 133 Cal. App.3d 879 [184 Cal. Rptr. 184] to show harm caused by intentional delay or alteration of benefits is not compensable outside the workers' compensation system. The court then said: "These cases confirmed the principle that the WCAB is the most appropriate forum for resolving disputes over the delay or discontinuance of benefits." (Marsh & McLennan, Inc., supra, 49 Cal.3d at p. 7.)
[5] The issue of whether the 10 percent penalty under Labor Code section 5814 is sufficient to deter deliberate delay of workers' compensation benefits was discussed in Cervantes v. Great American Ins. Co., supra, 140 Cal. App.3d at pages 772-773. Plaintiff and amicus curiae argued a civil remedy was "necessary to deter insurance carriers from dragging their feet because the prospect of paying a 10 percent penalty does not now operate as a deterrent where the carriers can invest their reserves at a higher rate in the money markets during any period of delay." The court rejected the argument because plaintiff and amicus provided it with no "workable distinction" between cases where the 10 percent penalty applies and those where plaintiff and amicus contended "regular civil remedies should apply." Accordingly, the court referred the litigants to the Legislature.
[6] See Stoddard v. Western Employers Ins. Co. supra, 200 Cal. App.3d at pages 172-173; Hernandez v. General Adjustment Bureau, supra, 199 Cal. App.3d at page 1006.