Filed 1/24/14  Estrada v. Kaiser Foundation Hospital CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TERESA ESTRADA, | B247912 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC052278) |
| v. | |
| KAISER FOUNDATION HOSPITAL et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court for Los Angeles County, Randy Rhodes, Judge.  Reversed in part and Affirmed in part.

Teresa Estrada, in pro. per., for Plaintiff and Appellant.

Gittler & Bradford, Randy A. Berg and Stephen H. Marcus for Defendant and Respondent Kaiser Foundation Hospitals.

Pollak, Vida & Fisher, Daniel P. Barer and Anna L. Birenbaum for Defendant and Respondent County of Los Angeles.

La Follette, Johnson, De Haas, Fesler & Ames, Christopher P. Wend and David J. Ozeran for Defendant and Respondent Samer Alaiti, M.D.

Taylor Blessey, Barbara M. Reardon and Dean J. Smith for Defendant and Respondent Paul Grodan, M.D.

Plaintiff Teresa Estrada appeals from judgments of dismissal in favor of defendants Kaiser Foundation Hospitals (Kaiser), County of Los Angeles (erroneously sued as Olive View Medical Center), Samer Alaiti, M.D., and Paul Grodan, M.D., after all of those defendants' demurrers to Estrada's second amended complaint were sustained without leave to amend. We affirm the judgments as to County of Los Angeles, Dr. Alaiti, and Dr. Grodan, but reverse as to Kaiser.

## BACKGROUND[1]

Estrada worked as a housekeeping attendant for Kaiser. She alleges that she was exposed to certain infections while cleaning an empty patient room in May 2008, because the room was not identified as an isolation room. The following month, Estrada developed sores inside her mouth and on her scalp. When the sores did not go away after she applied over-the-counter medication, Estrada went to Olive View Medical Center (which is owned and operated by the County of Los Angeles) on July 2, 2008 for diagnosis and treatment.

Initially, Estrada's condition was diagnosed as impetigo and a fungal infection. She was instructed to use a medicated soap and shampoo, and to return if the sores did not subside. She returned on July 6, 2008, and was diagnosed with multiple infections. She was admitted to the hospital for several days and treated with intravenous antibiotics. At the time she was discharged, the sores were healing and she was able to eat. She was instructed to return to Olive View's dermatology clinic in a week.

---

[1]     Our discussion of the background facts is based upon several documents in the record, because the second amended complaint, which is the complaint at issue in this appeal, is not particularly clear. We limit our discussion to those facts that are relevant to the demurrers at issue in this appeal.

2

When Estrada went to the dermatology clinic as instructed, the physician there ordered a skin biopsy. He concluded she had pemphigus vulgaris, an autoimmune disorder, and prescribed prednisone for her. A few weeks later, Estrada went to her heart doctor, who told her that her skin was infected and she needed immediate treatment. He told her to go directly to a nearby hospital, where she was admitted and given intravenous antibiotics. She was discharged two weeks later, and told to go back to Olive View's dermatology clinic; when she did so, she was instructed to continue to take prednisone for pemphigus vulgaris.

Several days later, on August 27, 2008, Estrada retained the Law Firm of Kenneth H. Rowen (LFKHR) to file a workers' compensation claim against Kaiser. LFKHR submitted the claim form the following day. LFKHR also arranged for Estrada to be evaluated by Samer Alaiti, M.D. in connection with her workers' compensation claim, and provided him with Estrada's records from Olive View. On December 31, 2008, Dr. Alaiti reported to LFKHR that he had reviewed the records from Olive View, and he concluded there was no causation between Estrada's condition and her exposure while cleaning rooms at Kaiser.

Several months later, Estrada received a letter from LFKHR, informing her that an appointment had been scheduled for her to be examined by Dr. Paul Grodan. Dr. Grodan was provided with Estrada's medical records from several Kaiser facilities, as well as her records from Olive View. Estrada was questioned and examined by Dr. Grodan in July 2009. In March 2010, she was told by LFKHR that Dr. Grodan provided a report stating that her injuries were not work-related. She discharged LFKHR as her attorney a few months later.

Estrada continued to have outbreaks of sores, and went to various hospitals for treatment. By November 2010, her ex-husband, who had compiled her medical history and accompanied her to the hospitals, suggested to the treating physicians that her sores may be drug-induced; some of the physicians agreed it was possible

3

that the sores could be drug-induced rather than pemphigus vulgaris. In April 2011, Estrada was admitted to USC Medical Center, where she again received intravenous antibiotics. She was tested for pemphigus vulgaris, and the test came back negative.

In the meantime, Estrada, now representing herself, continued to prosecute her workers' compensation claim before the Workers' Compensation Appeals Board (WCAB), and on January 17, 2012, she entered into a settlement agreement with Kaiser. On that date, Estrada signed a form "Compromise and Release" that contained the following paragraph: "Upon approval of this compromise agreement by the Workers' Compensation Appeals Board or a workers' compensation administrative law judge and payment in accordance with the provisions hereof, the employee releases and forever discharges the above-named employer(s) and insurance carrier(s) from all claims and causes of action, whether now known or ascertained or which may hereafter arise or develop as a result of the above-referenced injury(ies), including any and all liability of the employer(s) and the insurance carrier(s) and each of them to the dependents, heirs, executors, representatives, administrators or assigns of the employee. Execution of this form has no effect on claims that are not within the scope of the workers' compensation law or claims that are not subject to the exclusivity provisions of the workers' compensation law, unless otherwise expressly stated."

Attached to the form "Compromise and Release" was a typewritten addendum, with certain handwritten modifications. Under the heading "Body Parts" was the following typewritten paragraph: "Included in this settlement is any potential claim of injury to applicant's head/headaches, Staphylococcus aureus, staph infection, chronic pain, internal organs, hypertension, hypertensive cardiomyopathy, congestive heart failure, Pemphigus vulgaris, and skin infection." The parties added the handwritten words "workers compensation" after the word

"potential," and handwrote "& hair loss" at the end of the sentence. The addendum also included a section headed "Denial of Injury." The typewritten part of that section included the following: "This settlement is based upon the AME opinion of Paul Grodan, M.D. [d]ated July 7, 2009. Dr. Grodan states that based upon his evaluation of the applicant and his review of the current medical file, he is unable to establish a nexus between the applicant's multiple medical conditions and employment at Kaiser Foundation Hospital." The parties added an additional date for Dr. Grodan's report, and handwrote an additional sentence following the above quoted sentence: "Applicant disputes Dr. Grodan's report and agrees to settlement to avoid litigation in this workers compensation case."

A week before signing the "Compromise and Release" in the workers' compensation case, Estrada, representing herself, filed the instant lawsuit. Using a form complaint, which attached a form cause of action for intentional tort, Estrada alleged a single cause of action for battery, stating that defendants "inflicted the Plaintiff with a drug-induced rash lasting for nearly three years." She also attached a 14-page typewritten document, setting out her claim in more detail. In essence, Estrada alleged that Kaiser (1) obtained the account and case numbers for Estrada's case, which were linked to Olive View's dermatology clinic, and solicited Olive View to create a new chart with a diagnosis of pemphigus vulgaris, prescribe prednisone, and schedule monthly appointments with Estrada for the purpose of generating medical records stating that she has pemphigus vulgaris; (2) solicited LFKHR to produce a fraudulent written subpoena and notice statement to obtain Estrada's medical records from Olive View and then disclose those records to Dr. Alaiti and Dr. Grodan; and (3) solicited Dr. Alaiti and Dr. Grodan to produce fraudulent medical evaluations criticizing Estrada's account of her occupational injuries. Finally, in the form "Exemplary Damages Attachment" to the complaint, Estrada alleged that Kaiser "had willfully and intentionally violated

5

California Civil Code Section 56.10 and California Labor Code Section 3820 in [an] effort to avoid liability and any compensation for the Plaintiff's occupational injuries," by (as best we can ascertain from the confusing allegations) dictating the contents and disclosure of Estrada's medical files.

Estrada filed a first amended complaint less than two weeks later. The first amended complaint was also a form complaint, but it did not include the form cause of action for intentional tort. Instead it simply attached a modified version of the typewritten attachment to the original complaint. The modified version added a prayer for relief, as well as allegations that asserted Estrada was exempt from the government tort claim filing requirements with regard to Olive View.

After demurrers were sustained with leave to amend, Estrada filed the second amended complaint, the complaint at issue here. Although she again used a form complaint, she attached to it a 40-page typewritten complaint setting out a detailed "chronological history" and purporting to allege two causes of action: intentional infliction of emotional distress (against LFKHR and Olive View), and civil battery (against all of the defendants).[2] Estrada also attached a form cause of action for intentional tort naming all of the defendants, and a form exemplary damages attachment. Although the complaint is difficult to navigate, the basis for her claims appears to remain essentially the same: she alleges that Kaiser (1) gave Olive View an "assessment plan" for Estrada, apparently directing Olive View to diagnose her with pemphigus vulgaris and treat her with prednisone; (2) solicited LFKHR to produce fraudulent documents relating to Estrada's medical records from Olive View, including letters stating that it provided those records to Dr.

---

[2] Although the heading of the second cause of action identifies only Kaiser and Olive View, the allegations appear to implicate the other defendants as well.

6

Alaiti and Dr. Grodan; and (3) solicited Dr. Alaiti and Dr. Grodan to produce unauthorized reports stating that her injuries were not work-related.

Each of the defendants filed a demurrer to the second amended complaint. Kaiser argued (1) the trial court had no jurisdiction over Estrada's claims because they fall under the exclusive jurisdiction of the WCAB (Lab. Code, § 5300); (2) Estrada released all claims against Kaiser related to her injuries; (3) the battery cause of action is barred by the two-year statute of limitations for battery (Code Civ. Proc., § 335.1); and (4) the complaint fails to state facts sufficient to state a cause of action. The County of Los Angeles (erroneously sued as Olive View Medical Center) argued (1) Estrada's claims are barred because she failed to comply with the requirements of the Government Claims Act (Gov. Code, § 900 et seq.); (2) the claims are barred by the statute of limitations for professional negligence (Code Civ. Proc., § 340.5); (3) the complaint fails to state a cause of action against the County because it does not allege any statutory basis for the County's liability; and (4) the complaint is uncertain. Both Dr. Alaiti and Dr. Grodan argued that Estrada's claims are barred by the litigation privilege (Civ. Code, § 47, subd. (b)) and the statute of limitations (Code Civ. Proc., §§ 335.1, 338, 340), and her complaint fails to state a cause of action against them.

The trial court sustained each demurrer without leave to amend, and dismissed each defendant. Estrada filed notices of appeal from each dismissal.[3]

---

[3] Estrada filed her notices of appeal after the trial court ruled on the demurrers, but before the court entered judgments of dismissal. We treat the premature notices of appeal as filed immediately after entry of the judgments. (Cal. Rules of Court, rule 8.104(d)(2).)

**DISCUSSION**

A.      *Standard of Review*

Because this appeal comes to us upon the sustaining of demurrers without leave to amend, we must assume the truth of the properly pleaded factual allegations in the complaint (to the extent we are able to comprehend them), but not contentions, deductions, or conclusions of law.  We also consider judicially noticed matters in determining whether the complaint states facts sufficient to constitute a cause of action.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer.  '[W]e are not limited to plaintiffs' theory of recovery in testing the sufficiency of their complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory.  The courts of this state have . . . long since departed from holding a plaintiff strictly to the "form of action" he has pleaded and instead have adopted the more flexible approach of examining the facts alleged to determine if a demurrer should be sustained.'"  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38-39.)

B.      *Kaiser's Demurrer Should Not Have Been Sustained Without Leave to Amend*

As noted, Kaiser raised four grounds in its demurrer:  (1) Estrada's claims fell under the exclusive jurisdiction of the WCAB; (2) Estrada released all claims against Kaiser related to her injuries; (3) the statute of limitations barred Estrada's claim for battery; and (4) the complaint fails to allege facts sufficient to state a cause of action.  Although we sympathize with the trial court in trying to decipher the complaint, which is extraordinarily confusing, we conclude that Estrada has alleged sufficient facts to state a cause of action outside the exclusive jurisdiction

8

of the WCAB and the terms of the release, and that she filed her complaint within two years after she discovered her alleged claim.  Therefore, the court erred in sustaining Kaiser's demurrer without leave to amend.

### 1.  *Workers' Compensation Exclusivity Rule Does Not Apply*

Under California's workers' compensation law, claims related to injuries suffered by an employee in the course and scope of her employment generally are subject to the exclusive jurisdiction of the WCAB.  (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 810-811 (*Vacanti*).)  As the Supreme Court explained, "The underlying premise behind this statutorily created system of workers' compensation is the '"compensation bargain."'  [Citation.] Pursuant to this presumed bargain, 'the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability.  The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort.' [Citation.]" (*Id.* at p. 811.)

"To effectuate this theoretical bargain, the Legislature enacted several provisions limiting the remedies available for injuries covered by the WCA [i.e., the Workers' Compensation Act] (the exclusive remedy provisions)." (*Vacanti*, *supra*, 24 Cal.4th at p. 811.)  Acknowledging that determining the exact parameters of workers' compensation exclusivity can be difficult, the Court summarized certain guiding principles:  "In determining whether exclusivity bars a cause of action against an employer or insurer, courts initially determine whether the alleged injury falls within the scope of the exclusive remedy provisions. Where the alleged injury is 'collateral to or derivative of' an injury compensable by the exclusive remedies of the WCA, a cause of action predicated on that injury

may be subject to the exclusivity bar. . . . [¶] If the alleged injury falls within the scope of the exclusive remedy provisions, then courts consider whether the alleged acts or motives that establish the elements of the cause of action fall outside the risks encompassed within the compensation bargain. '[I]n some exceptional circumstances the employer is not free from liability at law for his intentional acts even if the resulting injuries to his employees are compensable under workers' compensation.' [Citation.] Where the acts are 'a "normal" part of the employment relationship' [citation], or workers' compensation claims process [citation], or where the motive behind these acts does not violate a 'fundamental policy of this state' [citation], then the cause of action is barred. If not, then it may go forward." (*Id.* at pp. 811-812.)

Kaiser argues that Estrada's claims against it are barred by the workers' compensation exclusivity rules because "all of the acts attributable to Kaiser (whatever those acts are) were geared towards defending against or defeating [Estrada's] worker's compensation claim." Kaiser asserts that the present case on point with *Mitchell v. Scott Wetzel Services, Inc.* (1991) 227 Cal.App.3d 1474 (*Mitchell*), in which the appellate court found that a claim based upon an employer's in-house insurance administrator's misconduct during workers' compensation proceedings was subject to the exclusive jurisdiction of the WCAB. (*Id.* at p. 1481.) Kaiser's assertion is a bit too facile.

In *Mitchell*, the plaintiff alleged that the administrator had repeatedly delayed rehabilitation and disability payments, threatened to terminate benefits for untrue reasons, misrepresented to the plaintiff that checks had been mailed, stopped payment or put a hold on checks that had been delivered, misrepresented the availability of a rental car to take the plaintiff to a medical examination, and committed perjury before a WCAB judge. (*Mitchell*, *supra*, 227 Cal.App.3d at pp. 1477-1478.) The appellate court began its analysis by noting there is "a judicially

created exception to the WCAB's exclusive jurisdiction over insurers. Conduct which 'goes beyond the normal role of an insurer' renders the insurer vulnerable to suit as a 'person other than the employer.'" (*Id.* at p. 1479, quoting *Unruh v. Truck Insurance Exchange* (1972) 7 Cal.3d 616, 630-631 (*Unruh*).) It then closely examined the allegations of the plaintiff's complaint to determine whether the conduct alleged went beyond the normal role of insurer.

The appellate court noted that most of the plaintiffs' allegations "essentially involve the *payment* of benefits, the *enforcement* of the payment of benefits, the *discontinuance* of benefits, or rights *incidental* to the payment of benefits. . . . But for the failure of [the administrator] to pay benefits (by issuing timely negotiable checks), [the plaintiff] would have no complaint." (*Mitchell*, *supra*, 227 Cal.App.3d at p. 1480, italics added.) With regard to the allegations of perjury, the court found that "[t]he alleged perjury occurred in the course of a WCAB *enforcement* proceeding, and was motivated by [the administrator's] desire to deprive the WCAB of information relevant to possible penalties. It is hard to imagine any matter bearing more directly on enforcement of payments." (*Mitchell, supra*, 227 Cal.App.3d at p. 1481, italics added.) With regard to the administrator's misrepresentation about the rental car, the court observed that this alleged conduct was "the closest [the administrator] comes to stepping out of the role of insurer," since "[i]nsurers do not normally provide rental cars." (*Ibid.*) But the court found that even there, the activity was within the exclusivity provisions because it was closely connected to the payment of benefits, since "[t]he alleged misrepresentation occurred in the context of travel arrangements incidental to a medical examination which was part of the processing of [the plaintiff's] claim." (*Ibid.*) The court concluded that "[a]s reprehensible as [the administrator's] conduct may have been, it concerned how and when benefits are paid -- something

11

manifestly within a workers' compensation insurer's role," which distinguished it from *Unruh*. (*Ibid*.)

In this case, a close examination of the allegations of the complaint (a difficult job, we concede) reveals that at least some of Estrada's claims are based on alleged conduct that "goes beyond the normal role of an insurer" or employer, allegedly causing injury to Estrada beyond her purported industrial injury, and thus within the judicially-created exception to the WCAB's exclusive jurisdiction. (*Unruh*, *supra*, 7 Cal.3d at p. 630.) Specifically, in paragraphs 114 through 116 of the second amended complaint, Estrada alleges that: (1) Kaiser is self-insured (paragraph 114); (2) Kaiser (presumably in its role as insurer) was given Estrada's account and case numbers, which were linked to Olive View's dermatology clinic and gave Kaiser control to write information that would be recorded in the medical records (paragraph 115); and (3) Kaiser gave Olive View an "assessment plan" to be implemented on Estrada, which called for Estrada to be diagnosed with pemphigus vulgaris and treated with prednisone (paragraph 116). These allegations are reiterated, in varying forms, elsewhere in the complaint. For example, in paragraph 149, Estrada alleges that Olive View "allowed [Kaiser] to intervene on [Olive View's] initial treatment plan for plaintiff." In paragraph 159, she alleges that Kaiser "developed a plan for which [it] proposed a medical assessment plan which would account for Plaintiff's skin injuries." She alleged in paragraph 151 that two weeks after she started taking prednisone (as prescribed by Olive View), she developed on a previously unaffected area of her skin sores that were different than the sores she had when she first sought treatment. And she alleged in paragraph 163 that she did not, in fact, have pemphigus vulgaris, but instead had a drug-induced rash that was similar in appearance to pemphigus vulgaris.

12

As improbable as the allegations appear, on demurrer we must assume their truth. And if it were true that an employer, in its role as self-insurer, interfered with an employee's medical treatment by convincing the medical professionals treating the employee's industrial injury to intentionally state an incorrect diagnosis and order treatment that would only worsen the employee's condition rather than cure it, we conclude those acts would go far "beyond the normal role of an insurer" or employer. (*Unruh*, *supra*, 7 Cal.3d at p. 630.) Therefore, a cause of action predicated on those allegations would not be barred by the workers' compensation exclusivity rule, and Kaiser's first ground for demurrer fails.

2.      *Estrada Did Not Release Her Alleged Claim Against Kaiser*

Kaiser's second ground for demurrer also fails. Kaiser contends that the release Estrada signed in settlement of her workers' compensation claim bars the instant lawsuit. In making this argument, Kaiser quotes only the portion of the document that states Estrada released "all claims and causes of action, whether now known or ascertained or which may hereafter arise or develop as a result of the above-referenced injury(ies)." But the sentence immediately following the sentence Kaiser quoted states: "Execution of this form has no effect on claims that are not within the scope of the workers' compensation law or claims that are not subject to the exclusivity provisions of the workers' compensation law, unless otherwise expressly stated." Because we have found that a cause of action based on the allegations we identified in the previous section would not be barred by the workers' compensation exclusivity rule, it also would not be barred by the release Estrada signed.

13

### 3. *The Statute of Limitations Does Not Bar Estrada's Claim*

Kaiser's demurrer cannot be sustained on the third ground Kaiser asserted, i.e., the statute of limitations. The statute of limitations for battery or intentional infliction of emotional distress is two years. (Code Civ. Proc., § 335.1.) Kaiser observes that all of the conduct that Estrada alleges it did, including the alleged infliction of pemphigus vulgaris or treatment with prednisone, occurred in 2008. Kaiser also notes that Estrada was aware that she was suffering from an outbreak of sores by December 2, 2008. Therefore, Kaiser argues that Estrada's complaint, originally filed in January 2012, was untimely.

We disagree with Kaiser's analysis. Although Kaiser is correct that Estrada was aware that she was suffering from an outbreak of sores in 2008, she alleges (albeit not very well) that she did not know that Kaiser intervened in her medical treatment -- by directing Olive View to misdiagnose her with pemphigus vulgaris and treat her with prednisone -- which she seems to allege prevented her from getting the proper treatment for those sores, until sometime after she and her ex-husband received her files from LFKHR in July 2010. Thus, the statute of limitations for her cause of action against Kaiser did not accrue until sometime after July 2010, when she discovered Kaiser's alleged conduct. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1192-1193 [common law discovery rule, which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action, applies to statute of limitations unless the statute legislatively supplants it].) Accordingly, Kaiser's demurrer could not be sustained on statute of limitations grounds.

14

4. *Estrada Has Alleged Sufficient Facts to State a Cause of Action for Intentional Infliction of Emotional Distress, But Not For Battery*

Estrada's confusing second amended complaint purports to allege three causes of action, two of which are found in the typewritten complaint attached to the form complaint, and a third form cause of action for intentional tort. The form cause of action, however, does not allege any *facts* stating a cause of action, and therefore it is subject to demurrer.

The second cause of action, which names Kaiser as a defendant, is for civil battery. "The elements of civil battery are (1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 526-527.) Estrada appears to allege that Kaiser's conduct in giving Olive View an assessment plan to be implemented upon her ultimately resulted in the harmful contact that occurred when she went to USC Medical Center to be treated in April 2011, and the nurses had to peel away her clothing, which had adhered to the lesions on her body. While Estrada's description of this process no doubt demonstrates harmful and offensive contact, it does not allege civil battery because she consented to that contact (regardless of its alleged source). Therefore, the cause of action for battery against Kaiser was properly dismissed on demurrer.

Nevertheless, although the first named cause of action, for intentional infliction of emotional distress, is asserted only against LFKHR and Olive View, we conclude that Estrada has alleged sufficient facts -- which we must assume to be true for the purpose of demurrer, regardless of their improbability -- to state a cause of action against Kaiser for intentional infliction of emotional distress. "'The elements of a cause of action for intentional infliction of emotional distress

15

are (1) the defendant engages in extreme and outrageous conduct with the intent to cause, or with reckless disregard for the probability of causing, emotional distress; (2) the plaintiff suffers extreme or severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the plaintiff's extreme or severe emotional distress. [Citation.] "[O]utrageous conduct" is conduct that is intentional or reckless and so extreme as to exceed all bounds of decency in a civilized community. [Citation.] The defendant's conduct must be directed to the plaintiff, but malicious or evil purpose is not essential to liability. [Citation.]' [Citation.]" (*So v. Shin* (2013) 212 Cal.App.4th 652, 671.)

Estrada's allegation that Kaiser directed Olive View to misdiagnose her sores as pemphigus vulgaris and treat her with prednisone, which she alleges caused an outbreak of painful sores all over her body, satisfies these elements. Therefore, Kaiser's demurrer to her complaint was improperly sustained without leave to amend.

C. *Estrada's Causes of Action Against Olive View Are Barred by Her Failure to Comply With The Government Claims Act*

As noted, the County of Los Angeles (erroneously sued as Olive View Medical Center) asserted as one of the grounds for its demurrer that Estrada's claims against it were barred because she failed to comply with the requirements of the Government Claims Act (Gov. Code, § 900 et seq., also known as the California Tort Claims Act). Although the record does not disclose whether the trial court sustained the County's demurrer on this ground, Estrada appears to concede that it did in her Appellant's Opening Brief. The trial court was correct.

"Actions against a public entity, such as the County, are governed by the California Tort Claims Act (Gov. Code, § 900 et seq.). Under the Tort Claims Act, a plaintiff may not maintain an action for damages against a public entity unless a

16

written claim first has been presented to the defendant and has been rejected. (Gov. Code, §§ 905, 945.4). A claim based on a personal injury cause of action must be presented within six months of the date the cause of action accrued. (Gov. Code, § 911.2). After six months, a plaintiff may apply to the public entity for leave to present a late claim. The application must be presented within a reasonable time, not to exceed one year after the cause of action accrued (Gov. Code, § 911.4). If the application is denied, the plaintiff may, within six months, petition the court for an order for relief from the claims-presentation procedures (Gov. Code, § 946.6). [Citation.] The court, however, lacks jurisdiction to grant relief if the application to file a late claim was filed more than one year after the cause of action accrued." (*Brandon G. v. Gray* (2003) 111 Cal.App.4th 29, 34.) The Supreme Court has held that "a plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement. Otherwise, his complaint is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action." (*State of California v. Superior Court* (*Bodde*) (2004) 32 Cal.4th 1234, 1243.)

In this case, Estrada alleges in her second amended complaint that she complied with the Tort Claims Act by filing a claim form with an application for leave to present a late claim on January 19, 2012. That allegation does not demonstrate compliance with the claim presentation requirement, however, because the complaint alleges that she suspected wrongdoing by Olive View (i.e., the County) in November 2010. At that time, her claim against the County accrued (see *K.J. v. Arcadia Unified School Dist.* (2009) 172 Cal.App.4th 1229, 1241 [claim accrues when the plaintiff suspects a factual basis for it]), and she had six months to file a claim with the County, or one year to file an application for leave to file a late claim. (Gov. Code, §§ 911.2, 911.4.) Therefore, her allegation that she did not file her claim or application to file a late claim until January 2012

17

establishes that she did *not* comply with Tort Claims Act. Thus, the trial court properly sustained the County's demurrer without leave to amend.

D.      *Estrada's Causes of Action Against Dr. Alaiti and Dr. Grodan Are Barred By The Litigation Privilege*

Estrada's causes of action against Dr. Alaiti and Dr. Grodan are, in essence, based upon allegations that each of them submitted false medical evaluation reports in connection with her workers' compensation claim.[4] Dr. Alaiti and Dr. Grodan each demurred on the ground, among others, that Estrada's causes of action were barred by the litigation privilege, Civil Code section 47, subdivision (b). Once again, although the record on appeal does not reveal the basis upon which the trial court sustained their demurrers, Estrada appears to concede that the court found that the litigation privilege barred her causes of action. The trial court was correct.

Civil Code section 47, subdivision (b) "provides that 'A privileged publication . . . is one made: [¶] . . . [¶] (b) In any . . . (2) judicial proceeding. . . .' That privilege is absolute [citation], and applies to communications involving quasi-judicial proceedings, including workers' compensation proceedings. [Citation.]" (*Harris v. King* (1998) 60 Cal.App.4th 1185, 1187.) Moreover, the privilege applies even when the publication was "prepared and communicated maliciously and with knowledge of its falsity." (*Id.* at p. 1188.) The privilege applies to bar all claims based upon the publication, other than claims for malicious prosecution. (*Ibid.*)

---

[4]      Although she alleges that neither doctor was "lawfully authorized" to write the reports, those allegations are based upon what Estrada perceives to be improper procedures in appointing them and/or providing them with her medical records. There is no question, however, that the reports were prepared and communicated in the course of her then-pending workers' compensation claim.

18

The second amended complaint alleges that LFKHR, the law firm she retained to represent her with regard to her workers' compensation claim, arranged for Estrada to see Dr. Alaiti so he could evaluate her in connection with the workers' compensation claim, and that Dr. Alaiti provided the report to LFKHR. The complaint also alleges that Dr. Grodan provided his report in his capacity as the Agreed Medical Examiner for her workers' compensation claim. Because Estrada's claims against the two doctors are based upon the reports each doctor provided in connection with a workers' compensation proceeding, they are barred by the litigation privilege. Therefore, the trial court properly sustained their demurrers without leave to amend.

## DISPOSITION

The judgment in favor of Kaiser Foundation Hospitals is reversed. The judgments in favor of the County of Los Angeles, Samer Alaiti, M.D., and Paul Grodan, M.D. are affirmed. All parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.



We concur:




MANELLA, J.                EDMON, J.*

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19