Opinion
BROWN, J.
This case contains a new twist on the seemingly endless litigation over the scope of workers’ compensation exclusivity. Unlike, the typical case where an employee wishes to sue his or her employer or workers’ compensation insurance carrier, this case involves a group of medical providers that wish to sue a group of workers’ compensation insurers. In their novel complaint, the medical providers allege the insurers conspired to put them out of business by intentionally mishandling their lien claims before the Workers’ Compensation Appeals Board (WCAB) and seek only to recover the damage to their businesses. We now consider whether the exclusive remedy provisions of the Workers’ Compensation Act (WCA) preempt the statutory and tort claims asserted by these medical providers and conclude that these provisions bar some claims but not others.
I. Factual and Procedural Background
Because “[t]his case comes to us after the sustaining of a general demurrer . . . , we accept as true all the material allegations of the complaint.” (Shoemaker v. Myers (1990) 52 Cal.3d 1, 7 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016] (Shoemaker).) The following facts appear from the allegations of the complaint.[1]
Plaintiffs are (1) licensed medical groups that provided medical-legal services to employees with workers’ compensation claims, and (2) medical *808 management companies under contract to the medical groups.[2] To provide these services, plaintiffs employed or contracted with physicians to treat and evaluate employees injured in the workplace. After promptly paying these physicians, plaintiffs would seek compensation from the workers’ compensation insurance carrier of the employee’s employer.
Defendants are workers’ compensation insurance carriers.[3] At a meeting in 1991, defendants decided to put plaintiffs out of business by delaying payment or refusing to pay for services rendered by plaintiffs to injured workers. As part of their scheme, defendants agreed to keep the meeting secret and to deny the existence of their plan to eliminate plaintiffs.
In subsequent meetings, defendants discussed strategies and distributed “hit lists” of targeted medical providers, including plaintiffs. Reminiscent of the methods used by Great Benefit Insurance Company, the villain in the John Grisham thriller, The Rainmaker (Doubleday, 1995), defendants developed procedures for delaying or avoiding payment to plaintiffs using “false, fraudulent and frivolous objections.” Defendants incorporated these procedures into their claims manuals and training protocols. Defendants also misled plaintiffs into believing they would promptly pay all valid lien claims. Meanwhile, they publicly accused plaintiffs of being “fraud mills” and advised other insurance carriers not to pay plaintiffs’ claims.
*809 Due to the “no pay” or “slow pay” tactics of defendants, plaintiffs suffered heavy business losses. Because plaintiffs promptly paid the treating physician even if they failed to receive timely compensation, plaintiffs were especially susceptible to a disruption in cash flow. Not surprisingly, defendants’ tactics were quite effective, as “the average time from billing to payment rose dramatically” and “the percentage collected [by plaintiffs] of the amount billed steadily declined.” These tactics eventually forced plaintiffs out of business, and plaintiffs “now exist only to collect outstanding accounts receivable.”
Plaintiffs filed suit against defendants, alleging: (1) abuse of process; (2) fraud; (3) violations of the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.); (4) violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962(c)); (5) conspiracy to violate RICO {id., § 1962(d)); (6) intentional and negligent interference with ongoing businesses; (7) intentional and negligent interference with contractual and prospective economic relations; and (8) violations of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.). Plaintiffs based their claims on defendants’ alleged scheme to wrongfully delay or avoid payment on plaintiffs’ lien claims and sought to recover the damage to their businesses. In doing so, plaintiffs declined to seek recovery of any amount owed on their individual lien claims against defendants.
Defendants filed a demurrer to plaintiffs’ first amended complaint, alleging, among other things, that the exclusive remedy provisions of the WCA bar plaintiffs’ claims. The first trial court judge overruled the demurrer on exclusivity grounds, but dismissed with leave to amend on other grounds. After plaintiffs filed a second amended complaint, defendants filed another demurrer, again alleging that workers’ compensation exclusivity bars plaintiffs’ claims. The same judge overruled the demurrer again and held that “[t]his is not an action to adjudicate medical liens in Worker’s Compensation cases” and plaintiffs’ “use of the liens does not impinge on the exclusive jurisdiction of the Worker’s Compensation Appeals Board.”
After the first judge retired, a new judge took over. Two defendants subsequently added to the complaint filed a demurrer, contending once again that plaintiffs could only recover the remedies provided by the workers’ compensation system. After plaintiffs amended their complaint a third time, the second judge sustained the demurrer solely on exclusivity grounds. Concluding that “the gravamen of the complaints is . . . delay or refusal to pay medical liens,” the judge held that “exclusive jurisdiction is with the WCAB.”
*810 Plaintiffs appealed. The Court of Appeal affirmed for the reasons cited in its unpublished opinion in FWHC Medical Group v. CNA Casualty of California (June 18, 1998, B113493), a companion case with identical allegations and issues.[4] Specifically, the court concluded that (1) section 5300 of the Labor Code[5] establishes that the WCAB has exclusive jurisdiction over plaintiffs’ claims; (2) defendants did not act outside their proper roles as insurers as understood in Unruh v. Truck Insurance Exchange (1972) 7 Cal.3d 616, 630 [102 Cal.Rptr. 815, 498 P.2d 1063] (Unruh); and (3) plaintiffs’ claims do not fall within the public policy exception to workers’ compensation exclusivity stated in Gantt v. Sentry Insurance (1992) 1 Cal.4th 1083, 1100 [4 Cal.Rptr.2d 874, 824 P.2d 680] (Gantt), overruled on other grounds by Green v. Ralee Engineering Co. (1998) 19 Cal.4th 66, 80, footnote 6 [78 Cal.Rptr.2d 16, 960 P.2d 1046],
We granted review to determine whether the claims asserted by these medical providers, alleging that various workers’ compensation insurers conspired to intentionally mishandle plaintiffs’ lien claims in order to drive them out of business, are barred by workers’ compensation exclusivity.
II. Discussion
Article XIV, section 4 of the California Constitution gives the Legislature “plenary power ... to create, and enforce a complete system of workers’ compensation.” Pursuant to this authority, the Legislature enacted the WCA—a comprehensive statutory scheme governing compensation given to California employees for injuries incurred in the course and scope of their employment. (§ 3201 et seq.)
Under this statutory scheme, an employee injured in the workplace may request workers’ compensation benefits by delivering a claim form to the employer within 30 days of the injury. (See §§ 5400, 5401.) Benefits include compensation for medical treatment and other services “reasonably required to cure or relieve [the employee] from the effects of the injury.” (§ 4600; see also § 3207.) The employee may also obtain compensation for medical-legal evaluations necessary to establish his or her entitlement to benefits. (§ 4621.) If the employer’s workers’ compensation insurer accepts coverage, then the insurer substitutes for the employer and assumes liability for benefits owed to the employee under the WCA. (§§ 3755, 3757.)
Ordinarily, the insurer must pay all medical or medical-legal bills of an injured employee within 60 days of receiving the bill. (§§ 4603.2, subd. (b), *811 4622, subd. (a).) If the insurer, however, contests the bill, then the insurer has to pay the contested portion of the bill only after the WCAB orders payment. (See §§ 4603.2, subd. (b), 4622, subd. (a).)
Medical providers that treat employee injuries covered by the WCA may file a lien claim for the costs of their services directly with the WCAB. (§§ 4903, 5300.) Any such provider is a “party in interest” to the WCAB proceeding (Independence Indent. Co. v. Indus. Acc. Com. (1935) 2 Cal.2d 397, 408 [41 P.2d 320] (.Independence Indemnity)), and receives full due process rights, including an opportunity to be heard (see Beverly Hills Multispecialty Group, Inc. v. Workers’ Comp. Appeals Bd. (1994) 26 Cal.App.4th 789, 803-804 [32 Cal.Rptr.2d 293]).
The underlying premise behind this statutorily created system of workers’ compensation is the “ ‘compensation bargain.’ ” (Shoemaker, supra, 52 Cal.3d at p. 16.) Pursuant to this presumed bargain, “the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort.” (Ibid.)
To effectuate this theoretical bargain, the Legislature enacted several provisions limiting the remedies available for injuries covered by the WCA (the exclusive remedy provisions). (See Shoemaker, supra, 52 Cal.3d at p. 16.) Although the trade-off appears straightforward, “this court and the Courts of Appeal have struggled with the problem of defining the scope” of the compensation bargain. (Id. at p. 15.) Indeed, the unabated flow of published decisions clarifying the scope of workers’ compensation exclusivity suggests considerable confusion as well as innovative lawyering.
Nonetheless, we glean several guiding principles from the case law. In determining whether exclusivity bars a cause of action against an employer or insurer, courts initially determine whether the alleged injury falls within the scope of the exclusive remedy provisions. Where the alleged injury is “collateral to or derivative of’ an injury compensable by the exclusive remedies of the WCA, a cause of action predicated on that injury may be subject to the exclusivity bar. (Snyder v. Michael’s Stores, Inc. (1997) 16 Cal.4th 991, 997 [68 Cal.Rptr.2d 476, 945 P.2d 781] (Snyder).) Otherwise, the cause of action is not barred.
If the alleged injury falls within the scope of the exclusive remedy provisions, then courts consider whether the alleged acts or motives that *812 establish the elements of the cause of action fall outside the risks encompassed within the compensation bargain. “[I]n some exceptional circumstances the employer is not free from liability at law for his intentional acts even if the resulting injuries to his employees are compensable under workers’ compensation.” (Johns-Manville Products Corp. v. Superior Court (1980) 27 Cal.3d 465, 473 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758] (Johns-Manville).) Where the acts are “a ‘normal’ part of the employment relationship” (Fermino v. Fedco, Inc. (1994) 7 Cal.4th 701, 717 [30 Cal.Rptr.2d 18, 872 P.2d 559] (Fermino)), or workers’ compensation claims process (see Marsh & McLennan, Inc. v. Superior Court (1989) 49 Cal.3d 1, 10-11 [259 Cal.Rptr. 733, 774 P.2d 762] (Marsh)), or where the motive behind these acts does not violate a “fundamental policy of this state” (Gantt, supra, 1 Cal.4th at p. 1100), then the cause of action is barred. If not, then it may go forward.
With these principles in mind, we conclude that, while the alleged injury falls within the scope of the exclusive remedy provisions, some of the alleged acts and motives do not. Thus, we bar plaintiffs’ abuse of process and fraud claims on exclusivity grounds, but not their Cartwright Act and RICO claims. We also bar in part and allow in part plaintiffs’ tortious interference and UCL claims.
A. The Alleged Injury
The starting point of our analysis is the alleged injury underlying plaintiffs’ claims. This injury is collateral to or derivative of a personal “injury sustained and arising out of the course of employment” (a compensable injury). (Cole v. Fair Oaks Fire Protection Dist. (1987) 43 Cal.3d 148, 160 [233 Cal.Rptr. 308, 729 P.2d 743] (Cole).) Therefore, it falls within the scope of the exclusive remedy provisions.
Because workers’ compensation exclusivity is statutory in nature, we begin with the pertinent statutory provisions. (See American Psychometric Consultants, Inc. v. Workers’ Comp. Appeals Bd. (1995) 36 Cal.App.4th 1626, 1638 [43 Cal.Rptr.2d 254] (American Psychometric Consultants).) Subdivision (a) of section 3600 provides in relevant part: “Liability for the compensation provided by this division, in lieu of any other liabilityM¿hatsoever to any person . . . shall, without regard to negligence,,, exist against_an employer for any injury sustained by his or her employ ees.arising~out-of and in the course of the employment and for the death of any employee.J£_the injury proximately causes death, in those cases where the . . . conditions of compensation concur . . . .” (Italics added.) The “conditions of compensation” applicable to this case include: “(1) Where, at the time of the injury, *813 both the employer and the employee are subject to the compensation provisions of this division. [^] (2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment. [^] (3) Where the injury is proximately caused by the employment, either with or without negligence.” {Ibid.) Subdivision (a) of section 3602 then provides that: “Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is . . . the sole and exclusive remedy of the employee . . . against the employer . . . .” (Italics added.) Finally, section 5300, subdivision (a) states that proceedings “[f]or the recovery of compensation, or concerning any right or liability arising out of or incidental thereto” “shall be instituted before the [WCAB] and not elsewhere, except as otherwise provided in Division 4 ... .” (Italics added.)
The Legislature has extended the protection of these exclusive remedy provisions to workers’ compensation insurance carriers by defining the term “employer” to include “insurer.” (§ 3850, subd. (b).) Thus, these insurers “retain immunity from lawsuit as the ‘alter ego’ of the employer.” (Unruh, supra, 7 Cal.3d at p. 625, italics omitted.) Employees may, however, “bring suit against any person other than [their] employer [or their employer’s workers’ compensation insurer] who proximately caused [their] injury.” (Marsh, supra, 49 Cal.3d at p. 6, italics omitted; see also § 3852.)
Together, these provisions establish that the liability of employers and insurers for “industrial injury which results in occupational disability or death” is limited to workers’ compensation remedies. (Livitsanos v. Superior Court (1992) 2 Cal.4th 744, 752 [7 Cal.Rptr.2d 808, 828 P.2d 1195], italics omitted {Livitsanos).) Where “the essence of the wrong is personal physical injury or death, the action is barred by the exclusiveness clause no matter what its name or technical form if the usual conditions of coverage are satisfied.” (Cole, supra, 43 Cal.3d at p. 160.) In other words, the exclusivity provisions encompass all injuries “collateral to or derivative of’ an injury compensable by the exclusive remedies of the WCA. (Snyder, supra, 16 Cal.4th at p. 997.)
Thus, the trigger for workers’ compensation exclusivity is a compensable injury. An injury is compensable for exclusivity purposes if two conditions exist. First, the statutory conditions of compensation must concur. (See § 3600, subd. (a).) For example, if the injury arises “out of and in the course of the employment, the exclusive remedy provisions apply notwithstanding that the injury resulted from . . . intentional conduct . . . even though the . . . conduct might be characterized as egregious.” (Shoemaker, supra, 52 Cal.3d at p. 15.)
*814 Second, the injury must cause a “disability or the need for medical treatment.” (Gomez v. Acquistapace (1996) 50 Cal.App.4th 740, 748 [57 Cal.Rptr.2d 821] (Gomez).) “ ‘Injury’ includes any injury or disease . . . .” (§ 3208.) Therefore, “the exclusive remedy provisions apply only in cases of such industrial personal injury or death,” and the workers’ compensation system subsumes all statutory and tort remedies otherwise available for such injuries. (Shoemaker, supra, 52 Cal.3d at p. 16.)
Where the alleged injury is neither collateral to nor derivative of an injury that satisfies both of these conditions, then it is not subject to exclusivity. (See Snyder, supra, 16 Cal.4th at p. 997.) Thus, a cause of action predicated on an injury where “the basic conditions of compensation” are absent is not preempted. (Livitsanos, supra, 2 Cal.4th at p. 754.) For example, courts have allowed tort claims in cases where the alleged injury—the aggravation of an existing workplace injury—did not occur in the course of an employment relationship. (See, e.g., Weinstein v. St. Mary’s Medical Center (1997) 58 Cal.App.4th 1223, 1235-1236 [68 Cal.Rptr.2d 461] [allowing a medical malpractice claim against the employer because the resulting aggravation of the workplace injury did not arise out of the employment relationship].)
Causes of action seeking to recover “[e]conomic or contract damages incurred independent of any” workplace injury are also exempt from workers’ compensation exclusivity. (Pichon v. Pacific Gas & Electric Co. (1989) 212 Cal.App.3d 488, 501 [260 Cal.Rptr. 677], italics added (Pichon).) Indeed, only injuries “to the worker’s person, as opposed to his property,” are compensable. (Coca-Cola Bottling Co. v. Superior Court (1991) 233 Cal.App.3d 1273, 1287 [286 Cal.Rptr. 855] (Coca-Cola).) Thus, courts have refused to bar spoliation of evidence or fraud claims where the alleged injury—the loss of a prospective lawsuit against a third party—was not collateral to or derivative of an injury to the worker’s person. (See Gomez, supra, 50 Cal.App.4th at pp. 749-750 [spoliation of evidence]; Coca-Cola, supra, 233 Cal.App.3d at pp. 1288-1289 [same]; Ramey v. General Petroleum Corp. (1959) 173 Cal.App.2d 386, 400-401 [343 P.2d 787] [fraud]; but see Continental Casualty Co. v. Superior Court (1987) 190 Cal.App.3d 156, 162 [235 Cal.Rptr. 260].) Courts have also allowed an employee to recover economic damages on a wrongful termination claim because the damages arose out of the act of termination—and not out of an injury to the employee’s person. (See. Pichon, supra, 212 Cal.App.3d at pp. 500-501.) Finally, courts have exempted defamation claims from exclusivity because an injury to reputation does not depend on a personal injury. (See Howland v. Balma (1983) 143 Cal.App.3d 899, 904 [192 Cal.Rptr. 286].)
On the other hand, courts have regularly barred claims where the alleged injury is collateral to or derivative of a compensable workplace injury. For *815 example, courts have barred employees from suing for psychic injuries caused by their termination (see Semore v. Pool (1990) 217 Cal.App.3d 1087, 1104-1105 [266 Cal.Rptr. 280]), or their employer’s abusive conduct during the termination process (see Gates v. Trans Video Corp. (1979) 93 Cal.App.3d 196, 199-201, 206 [155 Cal.Rptr. 486]).
Courts have also consistently held that injuries arising out of and in the course of the workers’ compensation claims process fall within the scope of the exclusive remedy provisions because this process is tethered to a compensable injury. Indeed, every employee who suffers a workplace injury must go through the claims process in order to recover compensation. Thus, we have barred all claims based on “disputes over the delay or discontinuance of [workers’ compensation] benefits” (Marsh, supra, 49 Cal.3d at p. 7), including those claims seeking to recover economic or contractual damages caused by the mishandling of a workers’ compensation claim (see Stoddard v. Western Employers Ins. Co. (1988) 200 Cal.App.3d 165, 168-169, 172 [245 Cal.Rptr. 820] (Stoddard) [barring claims where the employee alleged economic damages due to delays in benefit payments]; Mottola v. R.L. Kautz & Co. (1988) 199 Cal.App.3d 98, 109 [244 Cal.Rptr. 737] (Mottola) [barring a breach of contract claim based on the refusal to pay benefits]). Likewise, claims seeking compensation for services rendered to an employee in connection with his or her workers’ compensation claim fall under the exclusive jurisdiction of the WCAB. (See Bell v. Samaritan Medical Clinic, Inc. (1976) 60 Cal.App.3d 486, 490 [131 Cal.Rptr. 582] [physician may not sue to recover fees for services rendered to an injured employee]; Workmen’s Comp. Appeals Bd. v. Small Claims Court (1973) 35 Cal.App.3d 643, 647 [111 Cal.Rptr. 6] [physician may not sue to recover fees for testimony at a WCAB hearing].)
In this case, plaintiffs seek to recover the economic damage to their businesses resulting from the failure to receive full and timely payment on their lien claims before the WCAB. These damages arise out of the alleged mishandling of plaintiffs’ lien claims. Plaintiffs concede that their underlying lien claims sought to recover compensation for medical services provided to workers injured in the course of their employment. Thus, the alleged injury underlying all of plaintiffs’ causes of action is collateral to or derivative of a compensable workplace injury and falls within the scope of the exclusivity provisions. (See Marsh, supra, 49 Cal.3d at pp. 7-8; Stoddard, supra, 200 Cal.App.3d at pp. 168-169, 172.)
In reaching this conclusion, we reject plaintiffs’ narrow interpretation of the exclusive remedy provisions. The mere fact that plaintiffs are medical *816 providers, and not employees, does not preclude the application of these provisions. The rights of lien claimants “derive from” the rights of injured employees. (Fox v. Workers’ Comp. Appeals Bd. (1992) 4 Cal.App.4th 1196, 1204 [6 Cal.Rptr.2d 252].) Therefore, plaintiffs stand in the place of the employees with respect to claims for workers’ compensation benefits, and plaintiffs’ rights cannot exceed employees’ rights. Because employees are limited to WCA remedies for all injuries caused by wrongful delays or refusals to pay (see, e.g., Marsh, supra, 49 Cal.3d at pp. 7-8; Stoddard, supra, 200 Cal.App.3d at p. 172; Mottola, supra, 199 Cal.App.3d at p. 109), plaintiffs are limited to the same. Indeed, we established long ago that the WCAB “has exclusive jurisdiction over all claims for compensation against an employer or insurance carrier involving medical, surgical and hospital treatment to injured employees . . . .” (Independence Indemnity, supra, 2 Cal.2d at p. 406, italics added.)
Plaintiffs’ decision to forgo recovery on their individual lien claims and to seek only economic damages also does not insulate their claims from the exclusivity provisions. Unlike the economic damages alleged in Coca-Cola, supra, 233 Cal.App.3d at pages 1288-1289, and Pichón, supra, 212 Cal.App.3d at, pages 500-501, the damage to plaintiffs’ businesses was proximately caused by the alleged mishandling of lien claims before the WCAB. Therefore, plaintiffs’ alleged injury was not “independent” of a compensable injury. (Pichon, supra, 212 Cal.App.3d at p. 501.) In any event, plaintiffs’ proposed distinction is meaningless. Every time an insurer fails to timely pay a valid lien claim, the aggrieved medical provider suffers economic damages. Accordingly, plaintiffs’ causes of action do not fall outside the scope of the exclusive remedy provisions by virtue of the remedy- they seek. (See Marsh, supra, 49 Cal.3d at pp. 7-8.)
A contrary result would create a huge loophole in the workers’ compensation system and eviscerate the compensation bargain. Employees often suffer economic damages when they suffer workplace injuries or fail to receive prompt payment of their medical bills. Under plaintiffs’ logic, these employees could circumvent the workers’ compensation system by asserting claims for economic damages even though their claims derive from their workplace injuries. This circumvention of the system, if allowed, would destroy the careful balancing of employee-employer rights created by the WCA and effectively breach the compensation bargain.
Finally, our recent decision in City of Moorpark v. Superior Court (1998) 18 Cal.4th 1143 [77 Cal.Rptr.2d 445, 959 P.2d 752] (City of Moorpark) is inapposite. In City of Moorpark, an employee alleged that her employer *817 terminated her because of her physical disability and asserted, among other things, violations of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), and wrongful termination in violation of public policy (Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, 178 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]) (Tameny claim). The employer demurred, contending that section 132a was the employee’s exclusive remedy. The trial court overruled the demurrer. The Court of Appeal denied the employer’s petition for writ of mandate, and we affirmed. (City of Moorpark, supra, 18 Cal.4th at pp. 1149, 1161.)
In concluding that FEHA and Tameny claims fall outside the scope of the exclusive remedy provisions, we observed that “the existence of a workers’ compensation remedy does not by itself establish that the remedy is exclusive.” (City of Moorpark, supra, 18 Cal.4th at p. 1154.) Only remedies found in division 4 of the Labor Code are exclusive. Because section 132a is located in division 1, we concluded it does not provide the exclusive remedy for disability discrimination. (City of Moorpark, at pp. 1154-1155.) We also held that section 5300 only makes the WCAB “the exclusive forum for pursuing a section 132a claim” and “does not establish that the section 132a claim is the employee’s exclusive remedy.” (City of Moorpark, at pp. 1155-1156.)
Here, unlike section 132a, the provisions that create the remedies for the mishandling of workers’ compensation claims—sections 4603.2, 4622 and 5814—are located in division 4. These remedies are therefore exclusive. (See City of Moorpark, supra, 18 Cal.4th at pp. 1154-1155.) Sections 4603.2 and 4622 give medical providers their sole remedy for delayed payment and impose a 10 percent penalty plus interest if the employer fails to pay their medical bills within 60 days under certain conditions.[6] (See American Psychometric Consultants, supra, 36 Cal.App.4th at p. 1640, fn. omitted [the *818 Legislature enacted sections 4603.2 and 4622 in order “to ensure that the bills of medical providers were promptly paid, and that protests or objections to the bills were promptly raised and adjudicated”].) Section 5814 then provides the exclusive remedy for employees “[w]hen [the] payment of compensation has been unreasonably delayed or refused’ and states that “the full amount of the [WCAB] order, decision or award shall be increased by 10 percent . . . .” (Italics added.) Section 5300 further states that the WCAB is the exclusive forum for resolving disputes relating to the remedies provided in division 4. Consequently, “the workers’ compensation system encompasses all disputes over coverage and payment.” (Marsh, supra, 49 Cal.3d at p. 8, italics added; see also Schlick v. Comeo Management, Inc. (1987) 196 Cal.App.3d 974, 981 [242 Cal.Rptr. 241] (Schlick) [“Where compensation is available under [division 4 of] the act for the alleged misconduct, . . .the [WCAB] has exclusive jurisdiction”].)
The existence of a penalty provision covering defendants’ alleged misconduct does not alter our analysis. Section 129.5, found in division 1, does not create a remedy against workers’ compensation insurers. Instead, it gives the Administrative Director of the Division of Workers’ Compensation (DWC) *819 the power to impose an “administrative” or “civil penalty” on insurers who unreasonably delay or refuse payment of compensation. (Ibid.) Potential penalties include “a civil penalty, not to exceed one hundred thousand dollars ($100,000)” (id., subd. (d)), and revocation of an insurer’s “certificate of authority.” (Id., subd. (d)(4).)[7] The director may impose these penalties in addition to any other remedy available under the WCA, including the penalties provided by sections 4603.2, 4622, and 5814. Thus, section 129.5 does not affect the exclusivity of remedies in division 4. Indeed, the Legislature’s enactment of a penalty provision—as opposed to a remedy provision—equally suggests an intent to have the DWC, rather than private litigants, address the type of insurer misconduct alleged here. Accordingly, the alleged injury underlying plaintiffs’ claims falls within the scope of the exclusive remedy provisions.
B. The Alleged Acts and Motives
Even if the exclusivity provisions cover the alleged injury, plaintiffs may still pursue their causes of action if they fit within the “narrow exception to the WCAB’s jurisdiction” established in Unruh, supra, 7 Cal.3d at pages 629-631. (Marsh, supra, 49 Cal.3d at p. 6.) (5) This exception focuses on the alleged acts or motives that establish the elements of the cause of action and considers whether these acts or motives constitute “a risk reasonably *820 encompassed within the compensation bargain.” (Shoemaker, supra, 52 Cal.3d at p. 16.) If they do, then the exclusive remedy provisions govern and bar the cause of action. If they do not, then the exclusive remedy provisions are inapplicable because the malfeasor is no longer acting as an “employer,” as understood in these provisions. (§§ 3600, 3602, 3850.) Here, plaintiffs’ abuse of process and fraud claims do not fall within this exception, but their Cartwright Act and RICO claims do. In addition, plaintiffs’ tortious interference and UCL claims escape preemption to the extent they are predicated on the conspiratorial acts of defendants—and not on the individual misdeeds of each defendant.
Since Unruh, courts have struggled to define the contours of this exception to workers’ compensation exclusivity. Throughout the years, we have identified various circumstances where the exception precludes application of the exclusive remedy provisions. For example, we have held that conduct “having a ‘questionable’ relationship to the employment” is not protected by the exclusivity rule. (Cole, supra, 43 Cal.3d at p. 161; see also Magliulo v. Superior Court (1975) 47 Cal.App.3d 760, 779 [121 Cal.Rptr. 621] (Magliulo).) We have also stated that conduct going “beyond the normal role of an insurer in a compensation scheme intended to protect the worker” is exempt from exclusivity. (Unruh, supra, 7 Cal.3d at p. 630; see also Marsh, supra, 49 Cal.3d at p. 11 [only conduct “so extreme and outrageous that” the defendant “in effect stepped out of its role as” an insurer precludes the application of workers’ compensation exclusivity].)
Despite these vague pronouncements, several guiding principles are clear. When determining whether the exception applies to a cause of action, courts first determine whether the alleged acts that give rise to that cause of action are “of the kind that [are] within the compensation bargain.” (Fermino, supra, 7 Cal.4th at p. 718.) In making this determination, courts may consider only those acts that relate to an element of the cause of action. Where these acts are “a normal part of the employment relationship” (Cole, supra, 43 Cal.3d at p. 160) or the workers’ compensation claims process (see Mitchell v. Scott Wetzel Services, Inc. (1991) 227 Cal.App.3d 1474, 1480-1481 [278 Cal.Rptr. 474] (Mitchell)), the cause of action is subject to exclusivity. Otherwise, it is not.
For this initial determination, courts consider only the acts themselves— and not the motive behind the acts. (See Fermino, supra, 1 Cal.4th at pp. 722-723.) In the exclusivity context, motive refers to the purpose or reason behind the acts and not the intentional or negligent nature of these acts. (See ibid.) Thus, courts should disregard any alleged intent beyond the intent to *821 do the acts that establish the elements of the cause of action when determining whether these acts are encompassed within the compensation bargain. Such a focus is necessary in order to preserve the compensation bargain. Indeed, permitting civil claims based on conduct that “appeared on its face to be a normal part of the employment relationship [or claims process] . . . merely because the mental state . . . rendered the conduct intentionally or knowingly tortious” undermines the premise behind the workers’ compensation system. (Id. at p. 713.)
Thus, typical employer actions “such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances” do not, by themselves, exempt a cause of action from exclusivity. (Cole, supra, 43 Cal.3d at p. 160.) Similarly, termination, a known risk of any employment relationship, does not, by itself, insulate a cause of action from the exclusive remedy provisions. (See Shoemaker, supra, 52 Cal.3d at p. 20.) “[Reasonable attempts to investigate employee theft, including employee interrogation, are [also] a normal part of the employment relationship” and cannot give rise to a court action against the employer. (Fermino, supra, 7 Cal.4th at p. 717.)
Insurer activity intrinsic to the workers’ compensation claims process is also a risk contemplated by the compensation bargain. Thus, insurer actions “closely connected to the payment of benefits” fall within the scope of the exclusive remedy provisions. (Mitchell, supra, 227 Cal.App.3d at p. 1481.) For example, a claims investigation, by itself, does not exempt a cause of action from exclusivity. (See Unruh, supra, 7 Cal.3d at pp. 628-629; Teague v. Home Ins. Co. (1985) 168 Cal.App.3d 1148, 1153 [214 Cal.Rptr. 773] (Teague).) Because denying or objecting to claims for benefits is also a normal part of the claims process, misconduct stemming from the delay or “discontinuance of payments ... is properly addressed by the WCAB.” (Marsh, supra, 49 Cal.3d at p. 11.) Indeed, California courts have invariably barred statutory and tort claims alleging that an insurer unreasonably avoided or delayed payment of benefits even though the insurer committed fraud and other misdeeds in the course of doing so.[8]
Of course, an employer or insurer may not use the exclusive remedy provisions as a “get out of jail free” card by characterizing its acts as a *822 normal employer or insurer activity. “What matters ... is not the label that might be affixed to the . . . conduct. . . .” (Fermino, supra, 7 Cal.4th at p. 718.) Rather, the critical issue is whether the alleged acts, bereft of their motivation, “can ever be viewed as a normal aspect of the employer relationship” or claims process. (Ibid.) Where the tortious act is not closely connected to a normal employer or insurer action, it is not subject to exclusivity. (See Marsh, supra, 49 Cal.3d at p. 10 [“Only when the entity commits tortious acts independent of its role as a provider of workers’ compensation benefits may an employee maintain a private cause of action under Unruh”].)
Thus, courts have permitted fraud claims against an employer when the employer conceals the existence of an employee’s workplace injury because such concealments cannot be linked to a normal employer action. (See Johns-Manville, supra, 27 Cal.3d at p. 477.) Involuntary confinement is not closely connected to a typical employment action even when committed in the course of an investigation of employee theft. Therefore, a claim of false imprisonment, by definition, falls “outside the scope of the compensation bargain.” (Fermino, supra, 7 Cal.4th at p. 723.) Indeed, violent and coercive criminal conduct committed against an employee’s person is always illegal regardless of the employer’s state of mind and is never subject to the exclusive remedy provisions. (Id. at p. 723, fn. 7; see also Iverson v. Atlas Pacific Engineering (1983) 143 Cal.App.3d 219, 227-228 [191 Cal.Rptr. 696] [physical assault and false imprisonment]; Meyer v. Graphic Arts International Union (1979) 88 Cal.App.3d 176, 178-179 [151 Cal.Rptr. 597] [assault and battery, false imprisonment, and rape]; Magliulo, supra, 47 Cal.App.3d at pp. 763, 779 [assault and battery].)
With respect to insurers, courts have permitted fraud claims when the insurer denies the existence of a workers’ compensation insurance policy, because such denials are not a normal part of the claims process. (See Jablonski v. Royal Globe Ins. Co. (1988) 204 Cal.App.3d 379, 391 [251 Cal.Rptr. 160].) Trespassing is also an atypical insurer activity even when committed in the course of a claims investigation. Therefore, it falls outside the compensation bargain. (See Teague, supra, 168 Cal.App.3d at p. 1153.) Finally, assault and the formation of a romantic relationship with an injured *823 employee are not closely connected to the claims process and are exempt from exclusivity. (See Unruh, supra, 7 Cal.3d at pp. 627-628, 630-631.)
In addition to the acts themselves, the motive element of a cause of action may insulate that cause of action from the purview of the exclusive remedy provisions. This exception to exclusivity, however, is quite limited. “[A]ny inquiry into an employer’s motivation is undertaken not to determine whether the employer intentionally or knowingly injured the employee, but rather to ascertain whether the employer’s conduct violated public policy and therefore fell outside the compensation bargain.” (Fermino, supra, 7 Cal.4th at pp. 714-715.) In other words, the motive element of a cause of action excepts that cause of action from exclusivity only if it violates a fundamental public policy of this state. (See Gantt, supra, 1 Cal.4th at p. 1100.) Thus, we have refused to bar both statutory and tort claims where their motive element violates such a policy. (See, e.g., City of Moorpark, supra, 18 Cal.4th at pp. 1155, 1161 [FEHA claim]; Gantt, at p. 1100 [Tameny claim]; Shoemaker, supra, 52 Cal.3d at pp. 22-23 [whistleblower claim under Gov. Code, former § 19683].)
We now apply these principles to plaintiffs’ specific claims and allegations.
1. Abuse of process and fraud claims
After reviewing the acts and motives that give rise to plaintiffs’ abuse of process and fraud claims, we conclude these claims do not fit within the Unruh exception to workers’ compensation exclusivity. Thus, they are barred.
Plaintiffs’ abuse of process and fraud claims, in essence, allege that each defendant engaged in a pattern or practice of delaying or denying payments in bad faith. For example, the abuse of process claims allege that defendants misused the claims process by making frivolous objections, filing sham petitions and documents with the WCAB, issuing unnecessary subpoenas, and improperly threatening to depose plaintiffs’ physicians. Similarly, the fraud claim states that each individual defendant made false statements about and during its processing of plaintiffs’ lien claims. All of these alleged acts are closely connected to a normal insurer activity—the processing and payment of medical lien claims. Therefore, plaintiffs’ abuse of process and fraud claims are encompassed within the compensation bargain. (See Marsh, supra, 49 Cal.3d at pp. 9-11.)
In reaching this conclusion, we reject plaintiffs’ attempt to shield these claims from preemption by including superfluous allegations unrelated to the *824 elements of the cause of action. For example, plaintiffs claim defendants committed abuse of process by advising other insurers not to pay plaintiffs’ claims, distributing hit lists of medical providers and conducting training sessions on how to delay or avoid payments on plaintiffs’ claims. These acts do not, however, support an abuse of process claim because they do not involve the use of a procedure “incident to litigation.” (Barquis v. Merchants Collection Assn. (1972) 7 Cal.3d 94, 104, fn. 4 [101 Cal.Rptr. 745, 496 P.2d 817] (Barquis).) Consequently, they cannot shield plaintiffs’ abuse of process claims from the reach of the exclusive remedy provisions.
Plaintiffs’ characterization of defendants’ acts of fraud as a “scheme” suffers from the same defect. Fraud does not require a scheme, and a scheme does not establish an element of a fraud claim. (See Civ. Code, § 1709.) Thus, the existence of a scheme cannot insulate plaintiffs’ fraud claim from preemption. In any event, the mere allegation of a conspiracy is not enough where, as here, the alleged acts in furtherance of the conspiracy—i.e., the fraudulent statements—are closely connected to claims processing, a normal insurer activity. (See Hazelwerdt v. Industrial Indent. Exchange (1958) 157 Cal.App.2d 759, 763 [321 P.2d 831] (Hazelwerdt).)
The fact that the misdeeds alleged in the abuse of process and fraud claims may constitute crimes under Insurance Code sections 1871 and 1871.4 does not alter our conclusion. Unlike “those classes of intentional . . . crimes against the employee’s person by means of violence and coercion, such as those crimes numerated in part 1, title 8 of the Penal Code,” regulatory crimes like the ones cited by plaintiffs do not “violate the employee’s reasonable expectations and transgress the limits of the compensation bargain.” (Fermino, supra, 1 Cal.4th at p. 723, fn. 7; see also Up-Right, Inc. v. Van Erickson (1992) 5 Cal.App.4th 579, 582-584 [7 Cal.Rptr.2d 34] (Up-Right) [criminal violations of child labor laws do not support an exception to exclusivity].)
Finally, neither abuse of process nor fraud contains a motive element that violates a fundamental public policy. Abuse of process claims merely require malice, which “may be inferred from the wilful abuse of the process.” (Tranchina v. Arcinas (1947) 78 Cal.App.2d 522, 526 [178 P.2d 65].) This malice element does not violate a fundamental public policy. Meanwhile, fraud requires only an “intent to induce” another “to alter his position to his injury or risk” and not an intent that violates a public policy rooted in a constitutional, statutory, or regulatory provision. (Civ. Code, § 1709.) Because the acts and motives underlying plaintiffs’ abuse of process and fraud claims fall within the risks contemplated by the compensation bargain, these claims are barred. (See Shoemaker, supra, 52 Cal.3d at p. 16.)
*825 2. Cartwright Act claim
Although we find plaintiffs’ abuse of process and fraud claims barred on exclusivity grounds, we reach a contrary conclusion as to their Cartwright Act claim. Because the wrongful acts and motives that give rise to plaintiffs’ Cartwright Act claim fall outside the compensation bargain, it is not subject to workers’ compensation exclusivity.
We begin with the alleged acts that give rise to plaintiffs’ Cartwright Act claim. The Cartwright Act “makes unlawful any ‘trust.’ ” (Jones v. H.F. Ahmanson & Co. (1969) 1 Cal.3d 93, 118 [81 Cal.Rptr. 592, 460 P.2d 464] (Jones); Bus. & Prof. Code, § 16726.) To establish that defendants comprised a trust, plaintiffs allege that defendants combined their “capital, skill and acts” in order to drive them “out of business.” As part of this combination, each defendant not only mishandled lien claims filed against it, but also; (1) encouraged other insurers to deny plaintiffs’ claims; (2) distributed hit lists of medical providers; and (3) exchanged strategies for delaying or avoiding payments to plaintiffs. This concerted effort by insurers to interject themselves into lien claims they did not insure is not a normal part of the claims process. Indeed, only the insurer that has insured a claimant’s employer—and no other insurer—is typically involved in that claimant’s workers’ compensation claim. By conspiring to influence the processing of claims it did not insure, each defendant stepped outside its proper role as an insurer and became “a ‘person other than the employer.’ ” (Unruh, supra, 7 Cal.3d at p. 630.) In doing so, each defendant stripped itself of the protection afforded by the exclusive remedy provisions of the WCA.
The motive element of a Cartwright Act claim also makes the exclusivity bar inapplicable. A “cause of action for restraint of trade under the Cartwright Act. . . must allege ... a purpose to restrain trade.” (Jones, supra, 1 Cal.3d at p. 119; see also Bus. & Prof. Code, § 16726.) By imposing such a requirement, “[t]he Cartwright Act merely articulates in greater detail a public policy against restraint of trade that has long been recognized at common law.” (Speegle v. Board of Fire Underwriters (1946) 29 Cal.2d 34, 44 [172 P.2d 867] (Speegle).) Because a Cartwright Act claim requires a motive that violates a fundamental public policy rooted in a statutory provision, it is not reasonably encompassed within the compensation bargain.
Hazelwerdt does not compel a contrary result. In Hazelwerdt, the plaintiff alleged that an insurer and a physician employed by that insurer to treat the plaintiff conspired to mishandle the plaintiff’s medical treatment. The Court *826 of Appeal barred the plaintiff’s civil conspiracy claim because the acts in furtherance of the conspiracy were closely connected to a normal insurer activity—the provision of medical treatment for a workplace injury. (See Hazelwerdt, supra, 157 Cal.App.2d at p. 763.) Unlike the conspiracy claim in Hazelwerdt, plaintiffs’ Cartwright Act claim alleges that each defendant conspired with parties that had no role in the handling of that defendant’s claims and sought to influence lien claims filed against other unrelated insurers. Thus, defendants’ conspiratorial acts cannot be linked to a normal insurer action during the claims process. (See Fermino, supra, 7 Cal.4th at p. 718.) Moreover, a Cartwright Act claim, unlike a civil conspiracy claim, requires a motive that violates a fundamental public policy. (Compare Speegle, supra, 29 Cal.2d at p. 44, with Lyons v. Security Pacific Nat. Bank (1995) 40 Cal.App.4th 1001, 1019 [48 Cal.Rptr.2d 174].) Accordingly, Hazelwerdt is inapposite, and we decline to bar plaintiffs’ Cartwright Act claim on exclusivity grounds.
3. RICO claims
We reach a similar conclusion with respect to plaintiffs’ RICO claims. The pattern of racketeering activity necessary to establish a RICO enterprise always falls outside the scope of the compensation bargain. Thus, plaintiffs’ RICO claims are exempt from the exclusivity bar.
In their complaint, plaintiffs allege that defendants violated and conspired to violate 18 United States Code section 1962(c). A violation of 18 United States Code section 1962(c) requires “(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.” (Sedima, S.P.R.L. v. Imrex Co., Inc. (1985) 473 U.S. 479, 496 [105 S.Ct. 3275, 3285, 87 L.Ed.2d 346], fn. omitted.) To establish a pattern of racketeering activity, plaintiffs must allege at least two predicate acts that “ ‘are interrelated by distinguishing characteristics’ ” (H.J. Inc. v. Northwestern Bell Telephone Co (1989) 492 U.S. 229, 240 [109 S.Ct. 2893, 2901, 106 L.Ed.2d 195] (H.J. Inc.)) and “amount to or pose a threat of continued criminal activity.” (Id. at p. 239 [109 S.Ct. at p. 2900].) “[T]he threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes” or “where it is shown that the predicates are a regular way of conducting defendant’s ongoing legitimate business ... or of conducting or participating in an ongoing and legitimate RICO ‘enterprise.’ ” (Id. at pp. 242-243 [109 S.Ct. at p. 2902], fn. omitted.)
Here, plaintiffs’ RICO claims allege that defendants conducted or conspired to conduct various enterprises through numerous acts of mail and wire *827 fraud. Because these predicate acts of mail and wire fraud allegedly form a pattern of racketeering activity, they, by definition, cannot be closely connected to a normal insurer activity. The compensation bargain anticipates that an insurer may commit various misdeeds during the claims process, including some criminal acts. (See Fermino, supra, 7 Cal.4th at p. 723, fn. 7; Vuillemainroy v. American Rock & Asphalt, Inc. (1999) 70 Cal.App.4th 1280, 1286-1287 [83 Cal.Rptr.2d 269] [involuntary manslaughter does not support an exception to exclusivity]; Up-Right, supra, 5 Cal.App.4th at pp. 582-584.) It does not contemplate that an insurer will engage in systematic and long-term criminal activities bound by common “ ‘purposes, results, participants, victims, or methods of commission . . . .’ ” (H.J. Inc., supra, 492 U.S. 229, 240 [109 S.Ct. 2893, 2901], quoting 18 U.S.C. former § 3575(e).) Indeed, such organized and systemic criminal misconduct is always illegal, regardless of the employer’s state of mind. (See 18 U.S.C. § 1962.) Accordingly, RICO claims are never subject to the exclusive remedy provisions, and we refuse to bar them here. (See Fermino, supra, 7 Cal.4th at p. 723, fn. 7.)
4. Tortious interference and UCL claims
We now turn to plaintiffs’ remaining claims—tortious interference with business relations and violations of the UCL. These claims encompass a wide range of misconduct due, in part, to the breadth of these causes of action and some haziness in the pleadings. After reviewing the alleged misconduct, we conclude these claims are barred to the extent they focus on the individual misdeeds of each defendant. They, however, are not precluded to the extent they are predicated on the conspiratorial misconduct of defendants.
As an initial matter, we note that neither tortious interference nor the UCL requires a motive that violates a fundamental public policy. Tortious interference claims encompass “wrongful” interferences and do not require an improper motive. (Della Penna v. Toyota Motor Sales, U.S.A., Inc. (1995) 11 Cal.4th 376, 392-393 [45 Cal.Rptr.2d 436, 902 P.2d 740] (Della Penna).) The UCL focuses solely on conduct and prohibits “ ‘anything that can properly be called a business practice and that at the same time is forbidden by law.’” (Barquis, supra, 7 Cal.3d at p. 113, quoting Note, Unlawful Agricultural Working Conditions as Nuisance or Unfair Competition (1968) 19 Hastings L.J. 398, 408-409.) “As a result, to state a claim under the [UCL] one need not plead and prove the elements of a tort. Instead, one need only show that ‘members of the public are likely to be deceived.’ ” (Bank of the West v. Superior Court (1992) 2 Cal.4th 1254, 1267 [10 Cal.Rptr.2d 538, *828 833 P.2d 545], quoting Chern v. Bank of America (1976) 15 Cal. 3d 866, 876 [127 Cal.Rptr. 110, 544 P.2d 1310].) Thus, these claims only escape preemption if the underlying acts fall outside the scope of the compensation bargain.
An examination of the alleged acts underlying plaintiffs’ tortious interference and UCL claims yields mixed results. These acts fit into two categories: (1) individual acts of a defendant that establish a pattern or practice of mishandling plaintiffs’ lien claims; or (2) acts in furtherance of a conspiracy among defendants to mishandle plaintiffs’ lien claims. As explained below, we find plaintiffs’ tortious interference and UCL claims barred to the extent they are predicated on the first category of misconduct but permissible to the extent they are based on the second.
The first category of misconduct covers the wrongful acts of each individual defendant during the claims process and is virtually identical to the misconduct alleged in plaintiffs’ abuse of process and fraud claims. The mere fact that an individual insurer has a pattern or practice of bad faith delays or denials of payment is not enough to insulate a cause of action from preemption where, as here, each wrongful act is closely connected to a normal insurer activity—the processing of medical lien claims. Indeed, such misconduct is indistinguishable from the insurer misconduct alleged in the claims barred by Marsh, supra, 49 Cal.3d at pages 9-11.[9]
In contrast, the second category involves far more than the pattern or practice of an individual insurer. This misconduct consists of a conspiracy among multiple insurers to coordinate the economic destruction of plaintiffs through the mishandling of their lien claims. By joining this conspiracy, each individual defendant necessarily became involved in claims it did not insure. Thus, the second category of misconduct is almost identical to the misconduct underlying plaintiffs’ Cartwright Act claim and cannot be connected to a normal insurer activity. Accordingly, plaintiffs’ tortious interference and UCL claims are not barred to the extent they are predicated on defendants’ conspiratorial acts.
In closing, we stress that our decision today merely holds that some of plaintiffs’ claims are not barred by the exclusive remedy provisions of the WCA. We make no judgment as to the viability of these claims, and defendants are free to challenge them on any other grounds.
*829 Disposition
We affirm in part and reverse in part the judgment of the Court of Appeal and remand for further proceedings consistent with this opinion.
George, C. J., Mosk, J., Kennard, J., Baxter, J., and Chin, J., concurred.
WERDEGAR, J., Concurring.
I agree with the disposition and much of the reasoning of the majority opinion. I write separately only to distance myself from the suggestion that Gantt v. Sentry Insurance (1992) 1 Cal.4th 1083 [4 Cal.Rptr.2d 874, 824 P.2d 680] created a free-floating exception to the exclusivity provisions of the Workers’ Compensation Act (Lab. Code, §§ 3600, 3602) applicable whenever a court determines that the motive behind an employer’s tortious acts violates a fundamental public policy. (See maj. opn., ante, at pp. 810, 812, 823.) To interpret Gantt this way is to elevate its broad rhetoric to positive law. Properly and narrowly read, Gantt does not purport to create such an exception. Instead, the case holds simply that an employer that interfered with an official investigation of sexual harassment, by firing an employee who spoke with investigators of the Department of Fair Employment and Housing, thereby committed “misconduct [that] cannot under any reasonable viewpoint be considered a ‘normal part of the employment relationship’ (Cole v. Fair Oaks Fire Protection Dist. [(1987)] 43 Cal.3d [148,] 160 [233 Cal.Rptr. 308, 729 P.2d 743]) or a ‘risk reasonably encompassed within the compensation bargain.’ (Shoemaker v. Myers [(1990)] 52 Cal.3d [1,] 16 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].)” (Gantt v. Sentry Insurance, at p. 1100.) In other words, the gravamen of the Gantt plaintiff’s claim was not an interest protected by the Workers’ Compensation Act. “[T]he fundamental basis of workers’ compensation is an injury sustained in and arising out of the course of employment when the injury is ‘personal physical [or emotional] injury or death.’ (Cole v. Fair Oaks Fire Protection Dist., [at p.] 160.) Conversely, the exclusive remedy provisions apply only in cases of such industrial personal injury or death.” (Shoemaker v. Myers, at p. 16, italics in original.) When a lawsuit does not implicate the employee’s interest in recovering for such injuries, the act simply has nothing to say. The same is true here. No one can seriously argue the Legislature intended the act to protect health care providers against combinations in restraint of trade. Because the act and its exclusivity provisions do not apply, we need not speak of exceptions.

Plaintiffs request judicial notice of a verified complaint filed by one of the defendants in an unrelated case. Certain amici curiae request judicial notice of the form 10-Q filed by TriCare, Inc., a plaintiff in the companion case that settled, and its 1990 annual report. Because none of these documents are relevant, we deny these requests. (See Mangini v. R.J. Reynolds Tobacco Co. (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73].)

Plaintiffs are: (1) Charles J. Vacanti, M.D., Inc., doing business as NPI Medical Group; (2) Marina Pain Physicians Medical Group, Inc.; (3) Marina del Rey Ambulatory Surgery Center; (4) Huntington Pain Physicians Medical Group, Inc.; (5) Pain Centers of America Medical Group, Inc.; (6) National Pain Institute, Inc., doing business as Huntington Beach Surgery Center; and (7) Allegiant Physician Services, Inc.

Defendants are: (1) State Compensation Insurance Fund; (2) Golden Eagle Insurance Company; (3) California Compensation Insurance Company; (4) Superior Pacific Casualty Company (previously known as Pacific Rim Assurance Company); (5) American Manufacturers Mutual Insurance Company; (6) American Motorists Insurance Company; (7) American Protection Insurance Company; (8) Lumbermens Mutual Casualty Company; (9) Fremont Compensation Insurance Company; (10) Pacific Compensation Insurance Company; (11) Beaver Insurance Company; (12) Liberty Mutual Insurance Company; (13) Liberty Mutual Fire Insurance Company; (14) Liberty Insurance Corporation; (15) California Indemnity Exchange Insurance Company; (16) Republic Indemnity Company of America; (17) Continental Casualty Company; (18) CNA Casualty of California; (19) Transportation Insurance Company; (20) Transcontinental Insurance Company; (21) Valley Forge Insurance Company; (22) Superior National Insurance Company; (23) California Casualty Management Company; (24) California Casualty Insurance Company; (25) California Casualty General Insurance Company; (26) California Casualty & Fire Insurance Company; (27) California Casualty Indemnity Exchange; and- (28) Unicare Insurance Company. Golden Eagle Insurance Company, California Compensation Insurance Company, Superior Pacific Casualty Company, and Superior National Insurance Company are no longer parties to the appeal because the action against them was stayed pursuant to Insurance Code section 1020.

Because FHWC Medical Group, v. CNA Casualty of California settled, we dismissed that appeal.

All further statutory references are to the Labor Code unless otherwise stated.

Section 4603.2 states in relevant part:
“(b) Payment for medical treatment provided or authorized by the treating physician selected by the employee or designated by the employer shall be made by the employer within 60 days after receipt of each separate, itemized billing, together with any required reports. If the billing or a portion thereof is contested, denied, or considered incomplete, the physician shall be notified, in writing, that the billing is contested, denied, or considered incomplete, within 30 working days after receipt of the billing by the employer. A Notice that a billing is incomplete shall state all additional information required to make a decision. Any properly documented amount not paid within the 60-day period shall be increased by 10 percent, together with interest at the same rate as judgments in civil actions retroactive to the date of receipt of the bill, unless the employer does both of the following:
“(1) Pays the uncontested amount within the 60-day period.
“(2) Advises, in the manner prescribed by the administrative director, the physician, or another provider of the items being contested, the reasons for contesting these items, and the remedies available to the physician or the other provider if he or she disagrees. . . .
*818 “If an employer contests all or part of a billing, any amount determined payable by the appeals board shall carry interest from the date the amount was due until it is paid.
“An employer’s liability to a physician or another provider under this section for delayed payments shall not affect its liability to an employee under Section 5814 or any other provision of this division.”
Section 4622 states in relevant part:
“All medical-legal expenses for which the employer is liable shall, upon receipt by the employer of all reports and documents required by the administrative director incident to the services, be paid to whom the funds and expenses are due, as follows:
“(a) Except as provided in subdivision (b), within 60 days after receipt by the employer of each separate, written billing and report, and where payment is not made within this period, that portion of the billed sum then unreasonably unpaid shall be increased by 10 percent, together with interest thereon at the rate of 7 percent per annum retroactive to the date of receipt of the bill and report by the employer. Where the employer, within the 60-day period, contests the reasonableness and necessity for incurring the fees, services, and expenses, payment shall be made within 20 days of the filing of an order of the appeals board directing payment.
“The penalty provided for in this subdivision shall not apply if (1) the employer pays the provider that portion of his or her charges which do not exceed the amount deemed reasonable pursuant to subdivision (c) of Section 4624 within 60 days of receipt of the report and itemized billing, and (2) the appeals board sustains the employer’s position in contesting the reasonableness or necessity for incurring the expenses. . . .
“(b) Where requested by the employee, or the dependents of a deceased employee, within 20 days from the filing of an order of the appeals board directing payment, and where payment is not made within that period, that portion of the billed sum then unpaid shall be increased by 10 percent, together with interest thereon at the rate of 7 percent per annum retroactive to the date of the filing of the order of the board directing payment. [H] . . . [f]
“The provisions of Sections 5800 and 5814 shall not apply to this section.”

Section 129.5 provides in relevant part that:
“(a) The administrative director shall assess an administrative penalty against an insurer, self-insured employer, or third-party administrator for any of the following:
“(1) Failure to comply with the notice of assessment issued pursuant to subdivision (c) within 15 days of receipt.
“(2) Failure to pay when due the undisputed portion of an indemnity payment, the reasonable cost of medical treatment of an injured worker, or a charge or cost of implementing an approved vocational rehabilitation plan.
“(3) Failure to comply with any rule or regulation of the administrative director,
“(d) In addition to the penalty assessment permitted by subdivision (a), the administrative director may assess a civil penalty, not to exceed one hundred thousand dollars ($100,000), upon finding, after hearing, that an employer, insurer, or third-party administrator for an employer has knowingly committed and has performed with a frequency as to indicate a general business practice any of the following:
“(1) Induced employees to accept less than compensation due, or made it necessary for employees to resort to proceedings against the employer to secure compensation due.
“(2) Refused to comply with known and legally indisputable compensation obligations.
“(3) Discharged or administered compensation obligations in a dishonest manner.
“(4) Discharged or administered compensation obligations in a manner as to cause injury to the public ....
“Upon a second or subsequent finding, the administrative director shall refer the matter to the Insurance Commissioner or Director of Industrial Relations and request that a hearing be conducted to determine whether the certificate of authority, certificate of consent to self-insure, or certificate of consent to administer claims of self-insured employer, as the case may be, should be revoked.”

See, e.g., Marsh, supra, 49 Cal.3d at pages 7, 9-10; Mitchell, supra, 227 Cal.App.3d at pages 1480-1481; Phillips v. Crawford & Co. (1988) 202 Cal.App.3d 383, 389 [248 Cal.Rptr. 371]; Stoddard, supra, 200 Cal.App.3d at page 173; Mottola, supra, 199 Cal.App.3d at pages 103, 109; Schlick, supra, 196 Cal.App.3d at pages 981-982; Soto v. Royal Globe Ins. Co. (1986) 184 Cal.App.3d 420, 429-430 [229 Cal.Rptr. 192]; Captan v. Fireman’s Fund Ins. Co. (1985) 175 Cal.App.3d 146, 147-148 [220 Cal.Rptr. 549]; Teague, supra, 168 Cal.App.3d at pages 1151-1152; Santiago v. Employee Benefits Services (1985) 168 Cal.App.3d 898, 905-907 [214 Cal.Rptr. 679]; Cervantes v. Great American Ins. Co. (1983) 140 Cal.App.3d 763, *822 774 [189 Cal.Rptr. 761]; Denning v. Esis Corp. (1983) 139 Cal.App.3d 946, 948-949 [189 Cal.Rptr. 118]; Droz v. Pacific National Ins. Co. (1982) 138 Cal.App.3d 181, 187 [188 Cal.Rptr. 10]; Depew v. Hartford. Acc. & Indent. Co. (1982) 135 Cal.App.3d 574, 578-579 [185 Cal.Rptr. 472]; Fremont Indemnity Co. v. Superior Court (1982) 133 Cal.App.3d 879, 881-882 [184 Cal.Rptr. 184]; Ricard v. Pacific Indemnity Co. (1982) 132 Cal.App.3d 886, 894-895 [183 Cal.Rptr. 502]; Everfield v. State Comp. Ins. Fund (1981) 115 Cal.App.3d 15, 20-21 [171 Cal.Rptr. 164].

Plaintiffs may, however, pursue their tortious interference and UCL claims to the extent they are predicated on their RICO claims because conducting an enterprise through a pattern of racketeering activity establishes a wrongful interference (see Della Penna, supra, 11 Cal.4th at pp. 392-393) and an unlawful business practice (see Barquis, supra, 7 Cal.3d at p. 113).